BOARDMAN, next friend, *et al. vs.* TAYLOR *et al.*

1. A complainant cannot claim a continuance on the ground of the absence of one of the defendants. If one expects to make a witness of an adversary, he should take proper measures, by subpœna or interrogatories, as the case may require, to procure such testimony.

2. Where it was sought to reform a deed by adding a provision omitted from it as made and recorded, and the contest was with a subsequent purchaser for value, upon admission by counsel for complainant that they could not show any notice to the purchaser of the alleged mistake on the part of the scrivener, evidence of such mistake was inadmissible.

   (*a.*) Even if such testimony were admissible as against the grantees in the deed and other nominal defendants, its rejection would not require a new trial as to the real defendant against whom it was clearly inadmissible.

3. Notice to one who has been an agent, after the termination of the business involved in his agency, is not notice to his former principal.

   (*a.*) Where bankers, who were the agents of a customer for the purpose of loaning certain money, did so and consummated the arrangement by taking a deed to secure him, the fact that the trustee to whom the money was loaned deposited it in the bank and subsequently misappropriated it or drew checks upon it for his own

use with the knowledge of the bankers, did not affect their former principal, and evidence to show such fact was inadmissible.

4. Where beneficiaries of a trust who were of full age signed an application to the chancellor to allow a conveyance of the trust property to secure a loan for the benefit of the trust estate, it was their duty to take notice of the contents of such application, and in a contest with an innocent holder under the order so obtained, it was inadmissible to show that they did not read the application nor have it read to them.

5. While the act of 1876 requires service upon infant beneficiaries of a trust estate of an application to convey such estate, yet where land had already been conveyed by the trustee to secure a debt, under a valid order of the chancellor, and in 1876, the trustee being unable to pay the debt, a second order was taken allowing an extension of time and the execution of new evidence of indebtedness and a new deed, which were accordingly executed, the title of the grantee was not rendered void by a failure to serve infant beneficiaries of tender years with the application for leave to make the second conveyance.

(*a.*) Personal service of little children with an application for leave to sell trust property of which they are beneficiaries, though required by the act of 1876, is a formality.

6. The payment by a borrower of a sum of money to bankers for negotiating the loan, though they acted as agents for the lender, to whom the borrower paid legal interest, did not taint the transaction with usury, the lender having never received the amount so paid to the bankers and having no knowledge of it.

7. Courts of equity are careful of the rights of innocent purchasers, and the verdict upholding them in this case was right.

Continuance. Deeds. Title. Trusts. Evidence. Principal and agent. Notice. Service. Minors. Usury. Verdict. Before Judge SIMMONS. Bibb Superior Court. April term, 1880.

Boardman, in his own right and as next friend of the minor children of Charles T. Holmes, filed his bill against Mrs. E. A. (or A. E.) Watkins, Charles T. Holmes and his wife, Mrs. Georgia A. Holmes, and Gibbons M. Taylor. He alleged, in brief, as follows:

In 1863, John D. Watkins, the husband of one of the defendants, was the trustee of a Mrs. Edwards, and held

the property now in controversy. In that year he gave to complainant money to purchase from himself this land for the benefit of his wife and daughter. Complainant accordingly took a deed from Watkins as trustee, and on the same day made a deed to the lot to Rutherford, as trustee. This deed provided that the trustee should hold for the following uses : For the sole use of Mrs. Watkins for life; after her death for the use of Mrs. Holmes (at that time Miss Watkins) for life; if the latter should die without leaving any children, and leaving her mother surviving her, then Mrs. Watkins should have power to dispose of the property by will. This deed did not carry out the intention of the parties, which was to convey the remainder after the life estates to the children of Mrs. Holmes, who might be born of her marriage ; and the omission of such a provision was a mistake of the scrivener, which left a reversion in the grantor, who, in fact, disclaimed any interest in the property.

In 1872 Rutherford resigned the trust, and Holmes succeeded him. In 1874, Mrs. Watkins, Holmes, trustee, and Mrs. Holmes united in a petition to the chancellor in which they alleged that there were taxes due by the trust estate which they had no means of settling, and prayed that the trustee be allowed to secure a loan and to execute such deed, mortgage or other instrument as might be necessary for that purpose. At that time Mrs. Holmes had one minor child. A guardian *ad litem* was appointed for it, and recommended the granting of the petition. It was accordingly granted at chambers; the money, $1,250.00, was borrowed from Taylor, and a deed made to him to secure the loan, Mrs. Holmes and Mrs. Watkins assenting thereto in writing.

In 1876 the debt became due, but the trustee was unable to pay it. Accordingly, in April of that year, Mrs. Watkins, Mrs. Holmes and Holmes, trustee, again petitioned the chancellor to allow a renewal of the note to be made for eight months and the execution of a deed to

secure this renewal, which should include a power of sale; the petition also stated that the trustee contemplated securing money from a building and loan association to pay off this note at maturity, and prayed that he have power to execute such instruments as might be necessary for that purpose. At that time another child had been born to Mrs. Holmes. A guardian *ad litem* was appointed for the minors, but no service was had directly upon them; the guardian *ad litem* answered recommending the order, and it was granted at chambers. On April 28th, 1876, Holmes, trustee, with the written assent of his wife and Mrs. Watkins, executed the renewal note and the deed to secure the same, the latter containing a provision that if the debt was not paid at maturity Taylor should have the right to advertise the property for thirty days and sell it to pay the claim.

On August 3d, 1877, in consideration of indulgence on the note, Holmes, trustee, his wife and Mrs. Watkins, signed an agreement to allow the property to be advertised on November 3d, following, and after being advertised for thirty days, to be sold without opposition. At this time one of the children living at the date of the second order had died, and a third child had since been born to Mrs. Holmes. Under this agreement Taylor has advertised the lot for sale; the advertisement appeared November 6th, and the sale was set for December 6th.

The bill charges that the whole proceeding was illegal, for the following reasons: (1) Because the debt was not contracted for the benefit of the trust estate, but was for the personal benefit of Holmes. (2) Because no service was effected upon minor beneficiaries at the time of taking the second order, as required by the act of 1876. (3) Because of misdescription of the property. (4) Because the advertisement does not conform to the agreement. (5) Because the interest of the *cestui que trusts* is not such as is subject to levy and sale under mortgage with power of sale attached.

The prayer was for injunction to restrain the sale by Taylor, for reformation of the deed made by complainant to Holmes, trustee, for general relief and subpœna.

Taylor answered denying any notice whatever of any misapplication of the trust funds, insisting that the description of the land was substantially correct and was sufficient, alleging that he was a *bona fide* purchaser for value, and praying, by way of cross-bill, that the property be sold and this debt paid. He alleged that I. C. Plant & Son, bankers, acted as his agents to loan the money and take the security.

The other defendants, who were substantially complainants, concurred heartily with the allegations of the bill. They also alleged that the whole transaction was tainted with usury.

It is unnecessary to set out the evidence except the following: At the time of the original loan (April 20, 1874), the note provided for interest at the rate of one and three-eighths per cent. per month. This was paid in advance or deducted from the amount loaned. Plant & Son also charged Holmes, trustee, a commission for negotiating the loan, the amount of which was differently stated by the witnesses. This they kept themselves, and Taylor had nothing to do with it. In 1875 (after the passage of the usury law of that year) a first renewal of the note was had, and the interest specified at twelve per cent., which was paid. Whether Plant & Son again required commissions was a disputed point. This rate was continued afterwards, and the second renewal was made at the same rate. After the loan was consummated, Holmes, trustee, deposited the money in the bank of I. C. Plant & Son, and subsequently drew it out on his checks.

The jury found for the defendant (Taylor), and that the lot be sold to pay his debt ; and a decree was entered accordingly. Complainant moved for a new trial, on the following grounds:

(1). Because the court refused to continue the case on account of the sickness of Mrs. Watkins, one of defendants, who was a material witness for complainant to show misappropriation of the trust funds and want of knowledge on her part of the contents·of the orders of the chancellor, etc. [The court certified that the case had been set ten days in advance, and no effort had been made to secure her testimony by interrogatories.]

(2). Because the court refused to allow the draftsman of the deed from Boardman to Rutherford, trustee, to testify that he inadvertently omitted to include a provision conveying the remainder to the children of Mrs. Holmes, as he was instructed to do. [The court certified that this was ruled out after admission by counsel that they did not expect to show notice thereof to Taylor.]

(3). Because the court ruled out the same testimony when offered simply to reform the deed, and without reference to Taylor.

(4), (5). Because the court rejected testimony offered to show what use the trustee made of the money borrowed, and also checks drawn by him on Plant & Son after the loan and deposit with them as bankers, which were offered to show notice to them of use of the funds by the trustee.

(6). Because the court rejected testimony of Holmes to the effect that neither his wife nor Mrs. Watkins read the petitions or other papers under which the loan was made.

(7). Because the court overruled the objection of counsel to the admission in evidence of the petition of 1876, on the ground that the minors were not served.

(8). Because the court erred in ruling that there was no usury in the transaction between Holmes, trustee, and Taylor.

(9). Because the court overruled the objection of counsel to the admission in evidence of the order of April, 1876, based on the ground that there was no authority

of law allowing a trustee to make a deed with such power of sale, and the chancellor had no power to grant such an order.

The motion was overruled, and complainants excepted.

JAMES T. NISBET; WHITTLE & WHITTLE, for plaintiff in error.

LANIER & ANDERSON, for defendants.

JACKSON, Chief Justice.

This case arose on a bill filed by Boardman in his own right, and as next friend of the minor children of Holmes and wife, against the said Holmes and wife, Mrs. Watkins, the mother of Mrs. Holmes, and Taylor, a purchaser of a house and lot in Macon, to secure a debt of his, to reform a certain deed made at the instance of Watkins, the husband of Mrs. Watkins and father of Mrs. Holmes, to the said house and lot, by complainant to John Rutherford as trustee for the wife of Watkins for life and then to his daughter. The bill alleges that Watkins, trustee, had previously made complainant a warranty deed to the property, but furnished him the money to pay for it; and on the same day this deed was made to him he made the deed sought to be reformed to Rutherford by Watkins' directions. The bill alleges that the intention of the parties, Watkins and Boardman, was to give the use of the property to the children of Mrs. Holmes after the termination of her life estate, should she survive her mother, and that this provision was not inserted in the deed because of the inadvertence of the draftsman; that as the deed stands it leaves the remainder, after the termination of Mrs. Holmes' life interest, in complainant, who has no right to it; that the money was furnished him by Watkins to buy the house and lot for the benefit of his, Watkins', family, and he intended the property to go to his wife and daughter for life, and then in fee to the

infant children of the daughter, whom complainant represented as next friend in this suit.

The bill further alleges that Rutherford resigned the trust, and the legal title for the uses aforesaid got into Holmes ; that part of the lot has been sold by said Holmes, and that he executed a deed to Taylor to part of it in order to secure a debt contracted for the loan of money to Holmes, trustee, by Taylor, by order of the superior court of Bibb county, in 1874 ; that when it fell due Holmes could not pay it, and for forbearance another deed was executed under another order of the same court in 1876 ; that being still unable to pay when the money loaned became due, Holmes and wife and Mrs. Watkins executed an agreement by which the property was to be sold within thirty days after the first of November, 1877, when it should be advertised ; that accordingly it has been advertised and will be sold unless enjoined.

The bill alleges further, that at the date of the first sale under the order of court one child was born to the said Holmes and wife. Another was born before the second deed was made ; that died and a third was born, and none have ever been represented by a testamentary or a statutory guardian.

The bill denies the power of the court of equity to order the sale of the whole trust estate, and attacks the validity of the order on the ground that the debt was not contracted for the benefit of the trust estate or the *cestui que trusts*, but for the individual benefit of Holmes, the trustee ; that the minor children were not served under the act of February 23d, 1876 ; that the property is not properly described in the petition, order of court and advertisement ; and that the interest of *cestui que trusts* is not subject to be sold as directed and advertised.

Taylor answered the bill, and making his answer a cross-bill, denied the allegations of the bill so far as it set up any equities against him, and prayed for a decree in his favor as an innocent purchaser without notice of the

equities of these children, and that the house and lot be sold and his debt be paid.

The cause went to trial on the bill, the cross-bill and answers thereto, and testimony, and the jury found a verdict for the defendant, Taylor.

Thereupon a motion was made for a new trial on various grounds therein set out, it was refused, and complainant excepted.

1. The court did not abuse its discretion in not continuing the case. Mrs. Watkins' presence was not needed as a party. She was a defendant, and could not well assist the complainant. It is not pretended that complainant needed her as a party to help the prosecution of the case. Her interrogatories as a witness could have been taken. It was laches not to do so. She was not subpœnaed.

2. There was no error in rejecting the testimony of the draftsman in regard to mistake in drawing the deed, inasmuch as counsel for complainant admitted that they could not bring home to Taylor actual notice that such mistake was known to Taylor, and inasmuch as the record of the deed gave constructive notice only of the contents of it as it stood; nor was the rejection of the testimony such error, so far as the other defendants were concerned, as to authorize a new trial against Taylor. The others were all in confederacy with complainant, admitted the mistake, and the deed could doubtless be reformed so far as they were concerned by consent, and, if not, in a bill against them. It is clear that the only practical contest here was between Taylor and the *cestui que trusts.*

3. There was no error in rejecting the testimony of Holmes in regard to what disposition he made of the money after the trade had been consummated and the money had been deposited with Plant & Son as bankers. It is true that these bankers had negotiated the loan for Holmes with Taylor, and were his agents for that purpose; but when it was consummated, and the money loaned was deposited by Holmes with them as bankers, they assumed

:a new relation, and ceased to be the agents of Taylor, so that any notice to them of misapplication of the funds so deposited, after the agency had ceased and their new and independent character had been assumed, cannot be tortured into notice to Taylor so as to affect him with knowledge of this misapplication.

For the same reason the checks drawn by Holmes, some of which were apparently for his individual use, were inadmissible. They were drawn on the bankers and not on the agents of Taylor. Nor is there any proof, nor was any offered, to connect Taylor with knowledge of this misapplication, except in so far as notice to Plant & Son might be notice to him; and it would have been had the agency not ceased with the consummation of the sale or loan.

4. If Mrs. Watkins and Mrs. Holmes signed the application or petition for the order of the court, it was their duty to take notice of what they signed, and it was immaterial whether they read the paper or not. Therefore we see no damage or hurt in rejecting Holmes' testimony that they did not read it or have it read to them.

5. The act of February 23d, 1876, does require personal service upon these infants, and if the title to Taylor had not passed by virtue of the deed of 1874, made pursuant to the order of the chancellor of that year, there would be trouble on this point. Regarding the subsequent order as a mere extension of time or renewal of a deed made under a valid order when there was no personal service required, we do not see such error in the court's admitting the subsequent order of the chancellor to extend the time and to that end make another renewed note and deed as security, in order to get the extension of time which the borrower desired.

At that time—in 1876—when the last order of the chancellor was made, the title was in Taylor, and if the time had not been extended it would have remained in him to secure the loan; and if this petition for the ex-

tension of time had been rejected, the parties would have been sold out sooner.   At all events, equity would require that they should not object to what was done for their accommodation because a mere formality had not been complied with, when if it had not been done, the parties would have been in the same if not in a worse condition. We say formality, because personal service upon real infants like these—children but a few years old and wholly incapable of defending a suit—is a mere formality. The protection of such infants is in the breast of the chancellor.   If the judge does not protect them by the appointment, not of a mere man of straw, but of a competent guardian *ad litcm*, and if he does not himself see 'to it that their interests are protected, personal service upon them, helpless and ignorant as they are, will be no remedy.   Still, while the act is on the statute book, it is the duty of the courts to regard and enforce it.   But in this case the transaction, in so far as the loan and the security for it, had transpired under a valid order before the act was passed, and it would be inequitable not to enforce the prior valid order and deed made under it because of a mere renewal of it under an order defective on account of a mere informality.

6.  There was no usury in the transaction.   The payment of the money to Plant & Son to negotiate the loan, which money Taylor never got, and of which he knew nothing, cannot convict him of usury, or taint the loan he made with the leprosy of usurious interest.

7.  The statute—Code, §4221 *et seq.*, and §§2320-2327-2330—authorizes the proceeding before the chancellor at chambers.

The object was to pay taxes due and to support the *cestui que trusts.*   Taylor is an innocent purchaser who has done no wrong, and whom a court of equity will not endanger or damage, but will protect.   Its powers will not be exerted to his detriment.   He is ever a favorite in her courts, and the verdict and decree in this case are right.

The general countenance of the complainant's case is bad. The inception of it looks ugly. Watkins advances money to Boardman to buy a piece of property from himself as trustee, and then Boardman conveys to Rutherford in trust for Watkins' family. It looks as if this circumlocution had been designed to cover some transactions that would not bear the light of plain dealing. Be that as it may, under an order of chancery at chambers, in accordance with law, title has been passed to an innocent purchaser without notice to secure an honest loan of money, and time was extended under a like order when the borrower could not meet his engagement, and a solemn engagement entered into afterwards for additional time, to interpose no obstacle by those whom complainant alleges are the beneficiaries of the trust as the deed stands. Equity will not correct any mistake in the deed, so as to defeat such an innocent purchaser for value without notice of the mistake, and the decree must be affirmed.

Judgment affirmed.