DANIEL, tax-collector, *v.* BANK OF CLAYTON COUNTY.

1. The statute as embodied in section 10 of the general tax act of 1918 (Acts 1918, pp. 43, 78), providing how banking corporations shall make tax returns, requires such institutions to return and pay the taxes on "the shares of the stockholders" of such institutions, "at their full market value, including surplus and undivided profits." This statute contemplates payment of taxes on such shares of stock, not as property of the institution, but as property "of the stockholders," against whom the institution has a right to reimbursement, and is merely a convenient method for collecting taxes from such stockholders.

2. Under a proper construction of the statute as indicated in the preceding note, where a banking corporation makes its return for taxation under the provisions of such statute, the corporation is not authorized to deduct from the value of the capital stock embraced in the return the value of specific non-taxable United States liberty bonds and United States treasury certificates, which are held by the bank as an investment. Ownership by the corporation of such non-taxable bonds and certificates enter into and naturally enhance the value of the shares of capital stock issued to shareholders of the corporation; but the fact that it does so will not prevent the taxing authority from taxing the shares of stock at their full market value, without deducting the non-taxable securities which enter into the value of the shares of the stock.

No. 2874.    SEPTEMBER 27, 1922.

Injunction. Before Judge Hutcheson. Clayton superior court. October 1, 1921.

The Bank of Clayton County, a banking corporation organized under the laws of the State of Georgia, instituted an action against E. O. Daniel as tax-collector of Clayton County, Georgia, to enjoin, as illegal, the collection of certain State and county taxes for which the tax-collector was about to issue an execution against the bank. The grounds of attack upon the legality of the taxes were set forth in certain paragraphs of the petition which follow: " 5. That said defendant as tax-collector is acting under and is proceeding to collect taxes out of petitioner for said county and State for the year 1920, under and by virtue of an assessment levied by E. L. Dorsey, H. L. Turner, and J. S. Dixon, constituting the board of tax-assessors in and for said county, said assessors acting under and by virtue of the act of 1913 and codified in section 1116 (k) Park's Annotated Code of Georgia. 6. Petitioner shows that it is provided by the act of 1918, page 78, that no tax shall be assessed upon the capital of banks, but that the shares of the stockholders of the banks shall be taxed in the county where the banks are located at their full market value, including

surplus and undivided profits, and that the banks themselves shall make the returns and pay the taxes. 7. Petitioner shows that on January 1, 1920, its capital stock was $25,000, its surplus $11,-000.00, and its undivided profits $4,370.00 and that on said date, and constituting part of said capital, surplus, and undivided profits, petitioner owned and held as an investment bonds of the U. S. Government and certificates of indebtedness of the United States treasury, issued pursuant to the various acts of the Congress of the U. S., and commonly known as liberty bonds and U. S. treasury certificates, in the aggregate sum of $33,000.00 8. Petitioner shows that when it made its return to the tax-receiver for said county for the year 1920, as required by law, that it deducted in its tax return from the aggregate of its capital, surplus, and undivided profits, the amount of said liberty bonds and treasury certificates of indebtedness, as being exempt under said act of Congress from taxation by the State of Georgia and the County of Clayton. That its tax return then showed the balance of its capital, surplus, and undivided profits which was properly and legally taxable under the laws of Georgia, being the sum of $4,123.00. 9. That thereupon and thereafter the said board of county tax assessors in and for said county, in examining petitioner's return, illegally increased the aggregate of said return from $4,123.00 to $24,223.00, the amount of said increase being their assessment on the said liberty bonds and treasury certificates of indebtedness held and owned by petitioner and which constituted all of the balance of its capital, surplus, and undivided profits over and above the amount returned by petitioner. That said county tax-assessors arrived at the amount of said increase in petitioner's return by taking 60% of the par value of the liberty bonds and treasury certificates and adding same to the original return of petitioner. 10. Plaintiff charges that said increased assessment is therefore erroneous and illegal, in that thereby there is attempted to be subjected to State and County taxation bonds and obligations of the U. S. Government, issued pursuant to various acts of Congress, known generally as the liberty-loan acts, and under the terms and provisions of which acts it is provided in substance that such bonds and obligations of the U. S. Government shall be exempt, both as to principal and interest, from all taxation, except estate or inheritance taxes, imposed by authority

of the U. S. or its possessions, or by any State or local taxing authority. 11. Plaintiff charges that said increased assessment being erroneous and illegal as and for the reasons above shown, that the tax calculated upon and sought to be levied on the basis of and by virtue of said assessment is illegal in so far as it is sought to tax the said liberty bonds and treasury certificates of indebtedness. 12. Petitioner shows that it is justly due to pay the tax on its capital, surplus, and undivided profits to the extent of $4,123.00, the amount returned by it, the correct amount of taxes thereon being $113.38, which sum petitioner has tendered to said tax-collector and hereby continues to tender, and which sum was by said tax-collector refused. 13. Petitioner charges that the said assessment is erroneous and illegal, and the tax based thereon is illegal and void to the extent that and in that it is attempted to assess and tax by said local taxing authority and the State of Georgia bonds and obligations of the U. S. Government to the extent of $33,600.00, contrary to the provisions of the constitution of the U. S. and the statutes in such cases made and provided. 14. Petitioner charges that such assessment and the taxes levied thereon is erroneous and illegal, in that in truth and in fact by the method pursued the assessment is on the tangible assets of the plaintiff, and includes as such bonds and obligations of the U. S. Government of the face value of $33,600.00."

The defendant demurred to the petition on the grounds, among others, (a) that the petition failed to alleged a cause of action; (b) no tax is levied upon the exempted securities referred to in the petition, but the tax is levied solely upon the shares of stock in the bank; (c) the tax is not assessed against the property of the bank, but against the property of the stockholders of the bank, which tax is required to be paid by the bank; (d) it does not appear that any ad valorem or other tax was levied against the property of the bank, or against the tax-exempt securities owned by the bank, but that the tax was assessed upon the market value of the property of the stockholders of the bank. The answer admitted paragraph 6 of the petition quoted above, but either denied or stated that for want of sufficient information the defendant could neither admit nor deny each of the other above quoted paragraphs of the petition. The judge, to whom the case was submitted for decision upon the pleadings without a jury,

rendered judgment perpetually enjoining the defendant as prayed. The defendant excepted.

*George M. Napier, attorney-general, Seward M. Smith, assistant attorney-general,* and *W. H. Reynolds,* for plaintiff in error.

*O. J. Coogler* and *Smith, Hammond & Smith,* contra.

ATKINSON, J. 1. The decision depends mainly upon a proper construction of section 10 of the general tax act of 1918 (Acts 1918, pp. 43, 78) which is: " Be it further enacted by the authority aforesaid, that no tax shall be assessed upon the capital of banks, or banking associations, organized under the authority of this State, or of the United States, located within this State; but the shares of the stockholders of the banks or banking associations, whether resident or nonresident owners, shall be taxed in the county where the banks or banking associations are located, and not elsewhere, at their full market value, including surplus and undivided profits, at the same rate provided in this act for the taxation of monied capital in the hands of private individuals. *Provided,* that nothing in this section contained shall be construed to relieve such banks or banking associations from the tax on all real estate held or owned by them; but they shall return said real estate at its fair market value in the county where located. *Provided further,* that where real estate is fully paid for, the value at which it is returned for taxation may be deducted from the market value of their shares; and if said real estate is not fully paid for, only the value at which the equity owned by them therein is returned for taxation shall be deducted from the market value of their shares. The banks or banking associations themselves shall make the returns of the property and the shares herein mentioned, and pay the taxes herein provided. *Provided further,* that all property used in conducting or operating a branch bank shall be returned for taxation in the county where such branch bank may be located. The true intent and meaning of this section is that the bank itself shall return for taxation and pay the taxes on the full market value of all shares of said bank stock." In adopting this law the legislature, knowing that shares of the capital stock in such corporations were liabilities of the corporations as distinguished from their assets (*Mayor &c. of Macon* v. *Macon Construction Co.,* 94 *Ga.* 201, 21 S. E. 456), expressly required that such corporations should return for taxation and pay the taxes

on "the shares of the stockholders" of such institutions. In making this provision it was also known that, according to the decisions of this court, the corporation would have a common-law right of reimbursement against the stockholders for taxes paid out on account of their shares of stock. *Georgia State B. & L. Asso.* v. *Savannah,* 109 *Ga.* 63 (35 S. E. 67). In these circumstances the requirement that the corporation should return for and pay the taxes on the shares of stock of the shareholders in the corporation was evidently intended merely as a convenient method, which is practiced in many jurisdictions, of taxing the property of the shareholders.

2. Construing the statute as indicated in the preceding division, the law is plain that the bank did not have the right to deduct from its tax return the value of the non-taxable United States liberty bonds and United States treasury certificates which it held as an investment. These properties of the corporation of course entered into and enhanced the value of the shares of stock in the corporation which it had issued to its stockholders; but the fact that the value of such shares of stock was no enhanced would not authorize a reduction of the amount of the non-taxable securities from the value of the shares of the capital stock issued to the stockholders. The early case of Van Allen v. Assessors, 3 Wall. 573 (18 L. ed. 229), involved the right of a State to tax the shares of the capital stock in a national bank whose entire capital was invested in non-taxable United States securities; and, recognizing a distinction between the property of the corporation represented by its capital and the property of the shareholders represented by their shares in the capital stock, it was held that the State could levy the tax. In the course of the opinion it was said: "The tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal, and within the powers conferred upon it by the charter, and for the purposes for which it was created, can deal with the corporate property as absolutely as a private individual can deal with his own. . . The interest of the shareholder entitles him to participate in the net profits earned by the bank in the employment of its capital, during the existence of its charter, in proportion to the number of his shares, and, upon its dissolution or termination, to his proportion of the property

that may remain of the corporation after the payment of its debts. This is a distinct independent interest or property, held by the shareholder like any other property that may belong to him. Now, it is this interest which the act of Congress has left subject to taxation by the States, under the limitations prescribed." In Lionberger *v.* Rouse, 9 Wall. 468 (19 L ed. 721), it was said: "It is no longer an open question in this court, since the decision in the case of Van Allen *v.* The Assessors, 3 Wallace, 573, that the shareholders in a National bank are subject to State taxation, although the entire capital of the bank be invested in the bonds of the United States, which cannot be taxed by State authority." See also Cleveland Trust Co. *v.* Lander, 184 U. S. 111 (22 Sup. Ct. 394, 46 L. ed. 456). The later case of Home Savings Bank *v.* City of Des Moines, 205 U. S. 503 (27 Sup. Ct. 571, 51 L. ed. 901), recognized the soundness of the decisions in the cases of Van Allen and Cleveland Trust Company, supra, but distinguished those cases from the case then under consideration, saying: "The theory sustaining these cases is that the tax was not upon the corporations' holdings of bonds, but on the shareholders' holding of stock; and an examination of them shows that in every case the tax was assessed upon the property of the shareholders, and not upon the property of the corporation. There is nothing in them which justifies the tax under consideration here levied, as has been shown, on the corporate property." The defendant in error relies mainly on the decision in the Home Savings Bank case and quotes liberally from the opinion rendered therein. It appears from the opinion that there was no departure from the principles of law announced in the previous decisions of the Federal Court above cited, but the decision was made to turn upon a construction of the statute under which the tax was levied, the court holding that under a proper construction the statute there involved purported to require the corporation to return and pay the taxes on the shares of its capital stock as property of the corporation, without any right to reimbursement from the shareholders for taxes paid on shares of stock held by them. Upon this basis it was held that the corporation had the right to deduct from its return of its corporate capital stock the value of the non-taxable assets of the corporation. That case is distinguishable from the case now under consideration, because the statutes

are different and are construed differently under the decisions of this court. In *Georgia State B. & L. Asso.* v. *Savannah,* supra, it was said: " This is not a tax against the corporation. The shares owned by the stockholders are the individual property of the stockholders, and are liabilities of the corporation, and not assets. . . It may be that under such circumstances the corporation would make payment of this tax a charge on its own funds, but it is not bound to do so. As was said by Chief Justice Bleckley in the case of *McGowan,* supra, ' Of course, while the association is taxed upon this stock, it has or may have recourse to the owners for reimbursement . . ; the corporation is required to return it and pay the tax on it; but if it is necessary to equalize the matter as among the stockholders, the corporation can require the stockholder to pay the tax to it. This is simply a scheme to reach this class of stock conveniently, by making the corporation return it and pay taxes upon it, instead of the owner of the stock; . . . the adjustment of the matter to reach equality among the stockholders being left to the corporation and the stockholders to make among themselves.' So that the tax imposed by this section is against the individual stockholder on his property, and, as a matter of law, there is no provision made for any kind or character of taxation by the act we are considering, against the property of building and loan associations. Judge Cooley, in his work on Taxation (2d ed.), 231, says: ' A tax on the shares of stockholders in a corporation is a different thing from a tax on the corporation itself or its stock, and may be laid irrespective of any taxation of the corporation when no contract relations forbid.' Citing 1 Cush. 142; 26 N. J. 181; 47 Pa. St. 106; 21 N. Y. 449; 39 Ill. 130; 15 Ind. 150; 3 Wall. 573; 15 Wall. 300; 8 Lea, 406; 32 La. An. 157. There can, therefore, be nothing in the claim in this case that the shares of stock taxed represent the property of the corporation."

. It follows from what has been said that the judge erred in granting the injunction.

*Judgment reversed. All the Justices concur, except Hines, J., disqualified.*