Louis Reilly, Commissioner of Banking and Insurance of the State of New Jersey, petitioner,

*v.*

Margate Trust Company, defendant.

[Decided May 11th, 1940.]

*Mr. Lewis P. Scott,* for the petitioner.

*Mr. Edmund C. Gaskill, Jr.,* for the county of Atlantic.

Berry, V. C.

This matter comes before the court on petition of the Commissioner of Banking and Insurance for instructions in connection with his third and final report of liquidation of the Margate Trust Company. Jurisdiction over this trust was assumed by this court in July, 1938, and it has previously approved the first and second reports of the commissioner and the payments of dividends aggregating fifty-seven per cent. to common creditors, all preferred claims having been paid in full. The account shows a balance of $4,578.89 in cash in the hands of the commissioner. The county of Atlantic has filed with the commissioner a claim of $503.85 plus accrued interest for bank stock tax assessed pursuant to *R. S. 54:9* and claims to be entitled to preference in payment out of the funds in his hands.

The commissioner has refused such payment and contends that not only is the claim 'not entitled to preference in payment, but that the tax is not a debt of the bank at all. This contention is based upon the argument that the tax imposed by *R. S. 54:9* is primarily a tax on the shares of stock and not against the assets of the bank, and that such tax does not become a debt of the bank unless and until the bank by resolution assumes its payment pursuant to *R. S. 54:9-14*. The point would seem to be well taken.

The Margate Trust Company was taken over by the Commissioner of Banking and Insurance for the purpose of liquidation on April 2d, 1938. On January 7th, 1938, the bank had, pursuant to custom and *R. S. 54:9-5*, filed a statement with the secretary of the Atlantic County Board of Taxation and a duplicate thereof with the Commissioner of Banking and Insurance, and, pursuant to *R. S. 54:9-9*, the County Board of Taxation had determined the value of the common capital stock issued and outstanding and the amount of the tax levied thereon. Notice of the amount of such tax was given to the bank and demand for its payment by the bank made on May 23d, 1938. There is no record and no proof of any resolution of the board of directors of the bank assuming liability for the payment of the tax pursuant to *R. S. 54:9-14*, although it is stated *arguendo*, and not denied, that the bank uniformly paid the bank stock tax every year from 1928 until it was closed in 1938; and it is argued further that as a result thereof the bank, and therefore the commissioner, is estopped to deny assumption of the tax and liability for its payment.

An analysis of *R. S. 54:9* indicates the soundness of the commissioner's contention. Section 2 of the act provides that "the shares of common capital stock of the bank * * * shall be assessed and taxed." Section 3 exempts savings banks. Sections 5 to 13, inclusive, provide for the method of fixing the value of the stock, the applicable tax rate, the assessment of the tax, review of such assessment, collection of the tax from the bank, payment by the bank on demand, and apportionment and distribution of the tax paid between the county and the several taxing districts therein. It is significant that all through the act its language indicates that

it is the "common capital stock" of the bank, as distinguished from the assets of the bank itself, that is to be assessed and taxed. See particularly sections 2, 7, 10, 11 and 12. Section 12 specifically provides that "the shares of common stock of every bank shall be assessed *against the common stockholders*" and "shall be a lien *upon their common stock* from January 1st in each year" and that "the common stock may be levied upon and sold by the County Treasurer on default of payment." On behalf of the county, it is argued that section 11 specifically provides for the collection of the tax by the county treasurer from the bank, and that section 12 imposes upon the bank the obligation of its payment, and that nowhere in the act is there any provision for collection of the tax from anyone but the bank or for its payment by anyone except the bank. The argument is ingenious but not persuasive, as nowhere in the act is there any provision for the enforcement of collection, except by a levy upon and sale of the stock itself; in other words, there is no provision for a lien against the assets of the bank or for collection of the tax from the bank by a sale of such assets, or otherwise, except under the provisions of section 14, which provides for a voluntary assumption of the debt by the bank. In such latter case the tax becomes a lien against the bank's assets, but not otherwise. It would appear that the provisions of sections 11 and 12 for the collection from the bank and payment by the bank are merely for convenience of the taxing authorities, and were not intended to impose liability for the tax debt upon the bank itself. This thought is emphasized by the provisions of section 14, for if the legislature had intended to impose liability upon the bank by the provisions of sections 11 and 12, the provisions of section 14 would have been unnecessary. Aside from the liability imposed by section 14 the only other liability imposed upon the bank is that for certain penalties for delinquencies under section 17. There is no estoppel for it is apparent, I think, that previous payments of the tax by the bank were pursuant to the provisions of sections 11 and 12 under which the bank was acting more or less as the agent of its stockholders and had recourse to them (or to their stock) for reimbursement of the tax so paid. Tax liability is

never created by estoppel; it is dependent entirely upon statute.

Counsel for the county of Atlantic cites *Bergen County* v. *Englewood Title Guarantee and Trust Co., 14 N. J. Mis. R. 320; 184 Atl. Rep. 630,* as authority for its claim against the bank and for preferential payment. The case is not applicable, since there, as stated by the court, the "banking institution undertook, in conformity with section 8 of the statute (now section 14) to have assessed to and in its name the entire taxable value of all the shares of stock therein instead of having same assessed against the individual owners thereof and promised to pay such tax."

The commissioner is instructed that the county of Atlantic has no standing as either a preferred or common claimant against the assets of the insolvent bank remaining in his hands, on account of the tax assessed against the stock of that bank.

The prayers of the petition, other than that relating to the bank stock claim of the county of Atlantic, and that touching the proposed destruction of records, will be granted and I will advise an order accordingly.