39617, 39618. ROBERTS et al. v. GUNTER et al.; and vice versa.

GREGORY, Justice.

This appeal and cross-appeal raise questions regarding Georgia's bank share tax statute, OCGA § 48-6-90 (Code Ann. § 91A-3301).

In 1974 the Gunters purchased approximately 60% of the stock of the Hamilton Bank and Trust Company from a bank holding company. In February 1975, Hamilton Bank filed with the Fulton County taxing authorities (appellants here) a document which the Bank claimed was its 1975 bank share tax return. In May 1975, the County Board of Tax Assessors furnished the Bank with a notice of assessment which assessed the Bank's shares at a higher value than the Bank's return ($1,584,724). The 1975 bank share tax bill was sent to and received by the Bank, but it was not sent to the Gunters personally. On December 31, 1975, Hamilton issued a check for $396.18 for the purpose of paying the entire bank share tax on Hamilton's shares for 1975 (the 1975 tax bill sent by the county was in excess of $100,000).

In March 1976, Hamilton Bank requested an extension, which was granted, until April to file the bank's 1976 bank share tax return. Hamilton Bank filed what it argued was its 1976 bank share tax return in April (value of shares returned at $958,426). In March 1976, Hamilton also established a special reserve account for payment of the bank share tax.

Hamilton Bank ceased banking operations and was placed in receivership on October 8, 1976, with the Federal Deposit Insurance Corporation taking over the bank operations. The National Bank of Georgia purchased certain assets and assumed certain liabilities of Hamilton (including the bank shares tax special reserve account, which then contained $136,512, and corresponding tax liability), which it held for eight months before transferring them to the FDIC. The taxing authorities never sought to recover those funds from NBG. On October 11, 1976, the Tax Commissioner sent his notices of assessment to the now defunct Hamilton Bank (the 1976 county assessment was at $1,627,410).

National Bank of Georgia transferred the accounts of the former

Hamilton Bank to the FDIC in June 1977. The Tax Commissioner filed a claim for the unpaid 1975 and 1976 bank shares taxes in the receivership proceedings, which claim the FDIC disallowed.

In January 1977, attorneys for Fulton County sent notices of fi. fa. to the Gunters along with a letter explaining that the fi. fa. writs established a lien enforceable against any property owned by Mr. and Mrs. Gunter to satisfy taxes owed based upon their stock ownership in the Hamilton Bank and Trust Company. The Gunters filed an Affidavit of Illegality, challenging the imposition of the tax, which they were allowed to amend later, and posted $150,000 cash bond.

The Gunters sought summary judgment on their original Affidavit, which was denied, summary judgment being instead granted to the Fulton County tax authorities. A jury trial was held in June 1982, and a general verdict in favor of the Gunters was returned. In its judgment, the trial court cancelled the fi. fa. writs which had been issued against the Gunters and returned their cash bond.

The Tax Commissioner appeals from that jury verdict and judgment while the Gunters' cross-appeal from the denial of summary judgment on their original Affidavit and amended Affidavit. For reasons which appear below, we reverse as to the main appeal and remand for further proceedings not inconsistent with this opinion, and affirm as to the issues raised in the cross-appeal.

1. Appellants initially argue that the jury verdict was based upon an erroneous stipulation of counsel, which the court would not permit counsel for the Tax Commissioner to withdraw. We have examined this argument and find the court properly refused to permit counsel to withdraw from the stipulation.

In September 1979, associate counsel for the Tax Commissioner entered into an oral stipulation in open court that Hamilton Bank had filed bank share tax returns for 1975 and 1976. When trial of the case began, approximately three years later in June 1982, lead counsel for the Tax Commissioner asked that they be allowed to withdraw from the stipulation on grounds of mistake. The trial court held that the stipulation must be honored.

OCGA § 23-2-21 (c) (Code Ann. § 37-202) explains when mistakes are relievable in equity: "The power to relieve mistakes shall be exercised with caution; to justify it, the evidence shall be clear, unequivocal and decisive as to the mistake." In this case, the evidence was in conflict as to whether or not the documents filed in 1975 and 1976 were in fact bank share tax returns for those years. Absent "clear, unequivocal and decisive" evidence as to the mistake, relief on grounds of mistake will not be granted. See *Parker v. Fisher,* 207 Ga. 3 (59 SE2d 715) (1950); *Yablon v. Metropolitan Life Ins. Co.,* 200 Ga. 693 (38 SE2d 534) (1946).

There is evidence in the record to support the correctness of the stipulation. Having agreed to it in open court at the outset of the litigation, appellants remain bound by the stipulation. The trial court did not err in refusing to allow appellants to withdraw from it.

2. Appellants contend that the following portion of the trial court's charge was erroneous:

"I charge you that, as a matter of law, the bank is not the agent of a shareholder for tax purposes. Therefore, if you find that the notices required by law were served only on the bank and not on Mr. and Mrs. Gunter, then your verdict should be for Mr. and Mrs. Gunter." We agree with appellants that this charge was harmful error.

In an earlier analysis of our bank share tax statute, we explained that, ". . . the [bank share] tax is upon the bank's shareholders rather than the bank itself, although the value of those shares is based upon the capital (net worth) of the bank." *Bartow County Bank v. Board of Tax Assessors,* 248 Ga. 703, 704 (285 SE2d 920) (1982). This is true, even though the bank is required in the first instance to pay the tax. In analyzing another earlier bank share statute, the United States Supreme Court explained: "While the bank is required primarily to pay the tax on the shares, the statute shows that the payment is to be on behalf of the stockholders . . . It is on the stockholders that the burden ultimately rests." Des Moines Nat. Bank v. Fairweather, 263 U. S. 103, 111 (44 SC 23, 68 LE 191) (1923).

Our statute requires the bank to file the returns on the shares and pay the taxes on those shares for the shareholders. OCGA § 48-6-90 (b) (Code Ann. § 91A-3301). It is clear that under our statutory scheme, the bank serves as the agent for the shareholder for purposes of paying the bank share tax. See Cooley on Taxation, Vol. 3, 4th Ed., § 1269; 71 AmJur2d 580, State and Local Taxation, § 262.

Since the bank is statutorily required to act as agent for the shareholder, it is proper that notice of assessment be forwarded to the bank. It is not essential, however, that personal notice be sent to the individual shareholder.[1] See Corry v. Baltimore, 196 U. S. 466 (25 SC 297, 49 LE 556) (1905). Because the bank prepares the returns and is required in the first instance to pay the tax as the shareholder's agent, notice to the bank is deemed to be notice to the shareholders.[2] Smith

---

[1] The briefs point out that the general practice in this state is to forward all matters dealing with the bank share tax to the bank itself, not to the individual shareholders.

[2] This position is entirely consistent with our general rule under Georgia law that notice to an agent of any matter within the scope of his agency is notice to the principal. *Fowler v. Latham,* 201 Ga. 68 (3) (38 SE2d 732) (1946); *Bean v. Barron,* 176 Ga. 285 (2) (168 SE 259) (1932). See also 3 CJS 294, Agency, § 432.

v. Burton, 217 S2d 540, 545 (Ala. 1968); Clark v. First Nat. Bank, 224 NYS 10 (1927); Odland v. Findley, 38 FSupp. 563 (D.C. Ohio 1941) (reversed on other grounds, 127 F2d 948).

Consequently, the charge of the trial court was erroneous with respect to notice of the 1975 bank share tax. During all applicable periods dealing with the 1975 tax, it appears that the bank was the agent of the Gunters for bank share tax purposes. The charge was, therefore, harmful error with respect to the 1975 taxes. It does not appear that the same is true for the 1976 taxes, however.

The facts show that the 1976 bank share tax assessment on Hamilton Bank shares was not forwarded by appellants until October 11, 1976, some three days after Hamilton Bank had ceased banking operations and was placed in receivership with the FDIC. At this point, Hamilton Bank was no longer the agent of the shareholders, since it had ceased operations. See Odland v. Findley, supra, (noting that the agency relationship between bank and shareholders terminates upon the bank's insolvency). See also *Boardman v. Taylor,* 66 Ga. 638 (1881).

Under these facts, neither would notice of the 1976 assessment to the receiver, the FDIC, be notice to the shareholders. The Second Restatement of Agency, § 14F provides: "A person appointed by a court to manage the affairs of others is not an agent of the others." Comment "a" explains:

"a. A *receiver* is a fiduciary and has power to bind the organization of which he is the receiver to contract and tort liability. He is not, however, appointed by the organization or, necessarily, with its consent. He is essentially a representative of the court which appointed him, to whom he is primarily responsible, and under whose direction he can properly act contrary to the direction of those on whose account he acts." We agree with this provision of the Restatement and hold that under these facts the receiver would not have been the agent of Hamilton Bank's shareholders for receiving notice of the 1976 bank share tax assessment.

Because no agent received notice of the 1976 assessment on behalf of Hamilton's shareholders, we believe that the trial court's charge was proper with respect to the 1976 assessment, but, as indicated above, reversible error with respect to the 1975 assessment.

3. At trial, certain stipulations, testimony and documents regarding the reserve account established by Hamilton for payment of the bank share tax were allowed into evidence. Appellants objected to the admission of this evidence on grounds of relevancy and prejudice. Appellees argue the evidence is relevant because it relates to issues raised in their amended Affidavit of Illegality which were

not decided by the trial court on summary judgment.

The Amended Affidavit alleged it was illegal for appellants to attempt to collect the owed taxes from appellees since there was a reserve fund of $136,512 in the hands of the receiver which appellants had not made due and diligent efforts to collect. The record in this case reflects that appellants did make a timely unsuccessful attempt to recover these funds from the receiver. This question should have been resolved in appellants' favor on summary judgment, and admission of the evidence at trial was error.

The receiver of an insolvent bank is not liable for payment of bank share taxes assessed prior to insolvency. Taylor v. Hale, 56 SW2d 428 (186 Ark. 873) (1933). Reilly v. Margate Trust Co., 13 A2d 210 (N.J. 1940); Shippee v. Riverside Trust Co., 156 A 43 (Conn. 1931); Ward County v. Baird, 215 NW 163 (N.D. 1927); Walcott v. McCarroll, 213 P 296 (Okla. 1923); In re Feliciana Bank & Trust Co., 78 S 169 (La. 1918); State v. Barnesville Nat. Bank, 159 NW 754 (Minn. 1916); Stapylton v. Thaggard, 91 F 93 (C.C.A. 5, 1898); Baker v. King County, 50 P 481 (Wash. 1897); City of Boston v. Beal, 51 F 306 (C. C. Mass. 1892), affirmed without opinion in 55 F 26 (1893); Cooley on Taxation, Vol. 3, § 1269, supra.

Nor does the fact that the bank maintained a reserve account for payment of the taxes at the time it went into receivership distinguish it from the cases cited above.[3] It does not appear that these funds had been set apart for the shareholders as dividends or otherwise designated as shareholder property. Rather than being funds "belonging to or accruing to the shareholders," the account funds appear to have always been an asset of the bank subject to the prior claims of the bank's depositors and creditors. See Ward County v. Baird, supra at 166; Taylor v. Hale, supra, at 429.

Since appellants could not obtain payment of the taxes from the receiver, it was harmful error to put such evidence as the reserve account before the jury. It was not relevant and could have misled the jurors into believing there was a pool of funds available in the hands of the receiver from which taxes could have been paid if appellants had pursued it.

4. Appellants argue the trial court erred in granting appellees'

---

[3] OCGA § 7-1-202 (Code Ann. § 41A-813) establishes priorities for the payment of the liabilities of an insolvent bank, and state taxes are payable only after all costs and expenses of the administration of the liquidation or dissolution, and the payment of the claims of depositors. The record reflects the total amount the FDIC paid the depositors in this case exceeded the total assets of the bank, so there were no funds remaining for payment of the 1975 and 1976 bank share taxes.

motion in limine to exclude certain testimony regarding the dominant role Mr. Gunter played in the management of Hamilton Bank, the agency relationship between Gunter and Hamilton Bank, the financial condition of the Gunters and the valuation placed on their Hamilton stock by the Gunters. We find no error.

We note initially that the testimony sought to be introduced is not necessary to show the agency relationship between Gunter and the bank or the role he played in the management of Hamilton Bank in light of Division 2 above.

This testimony was sought to be introduced on the last day of trial as rebuttal testimony. Appellants offered the deputy commissioner of the state banking department and a bank examiner to testify as to what the examination of Hamilton Bank revealed with respect to the subjects indicated above. While the testimony may have been relevant, we believe its relevance was outweighed by the danger that it would have opened up entirely new collateral issues on the last day of trial.

The trial court has discretion to exclude otherwise relevant evidence which raises collateral issues. *Ludwig v. J. J. Newberry Co.,* 78 Ga. App. 871 (52 SE2d 485) (1949). See McCormick on Evidence, 2nd Ed. pp. 97-100 (1972). As the Court of Appeals noted in *Ludwig,* supra, "Although evidence of collateral matters may throw some remote light on the main issues of the cases, it is nevertheless necessary that trial judges be vested with some discretion as to the admissibility of this type of evidence. Otherwise, the whole course and progress of the trial could become converted to the determination of collateral issues rather than the main one." 78 Ga. App. at 876.

We find the trial judge did not abuse his discretion in excluding this evidence.

5. In their cross-appeal, the Gunters first argue the trial court erred in denying their motion for summary judgment on the issue of whether a bank's shareholders may be held liable for payment of the bank share tax. We find no error.

In our recent case of *Bartow County Bank v. Board of Tax Assessors,* 248 Ga., supra, at 704, we explained that "the [bank share] tax is upon the bank's shareholders rather than the bank itself . . ." In a prior case, we also upheld an earlier version of our bank share tax statute, explaining that such a tax creates a common law right of reimbursement against the shareholders for taxes paid out on account of their shares of stock. *Daniel v. Bank of Clayton County,* 154 Ga. 282 (1) (114 SE 210) (1922). This position is supported by the case law and the authorities. See Society for Savings in the City of Cleveland v. Bowers, 349 U. S. 143, 152 (75 SC 607, 99 LE 950) (1953);

Des Moines Nat. Bank v. Fairweather, 263 U. S. 103 (44 SC 23, 68 LE 191) (1923); National Bank v. Commonwealth, 76 U. S. (9 Wall.) 353 (19 LE 701) (1869); Van Allen v. The Assessors, 70 U. S. (3 Wall.) 573 (18 LE 229) (1865). Cooley on Taxation, Vol. 3, 4th Ed. § 1269;[4] 71 AmJur2d 580, § 262, supra.

While it is clear that the tax is one on the shareholders, the Georgia courts have not addressed the question of the shareholders' ultimate liability for unpaid bank share taxes assessed prior to the insolvency of their bank. We consider this question now, however, and agree with those few cases which have addressed this problem that the shareholders may ultimately be held liable for these unpaid taxes.

In Pratt v. State, 25 Ala. App. 258 (145 S 163) (1932), the court held the Alabama bank share tax statute imposed a personal obligation on the shareholders of Alabama banks, and the shareholders of an insolvent bank which failed to pay taxes assessed prior to insolvency were individually liable for such taxes. Similarly in State v. Security Nat. Bank, 173 NW 885, 887 (Minn. 1919), that court found a shareholder of an insolvent bank is not relieved from payment of bank share taxes on his stock because the bank has no funds of the shareholder with which to pay his tax for him. See also, School Dist. of City of Lansing v. City of Lansing, 281 NW 883 (286 Mich. 244) (1938); Ward County v. Baird, 215 NW 163, supra.

In support of their position, cross-appellants argue that if individual shareholders rather than the bank were ultimately liable for the bank share tax, then payment of the tax by the bank would constitute taxable dividend income to the shareholders. Since it does not, the tax paid by the bank is not really a tax on the shareholder. This argument ignores the current tax structure governing these transactions. Internal Revenue Code § 164 (e) grants corporations a deduction for taxes imposed on its shareholders but paid by the corporation such as with our bank share tax. It also denies the shareholder any deduction for the tax. Because the shareholder is denied a tax deduction to which he would otherwise be entitled, Treasury Regs. § 1.164-7 provides that he need not recognize income on the constructive dividend. 26 CFR § 1.164-7 (1982). See Hillsboro

---

[4] Cooley on Taxation, Vol. 3, 4th Ed. § 1269 explains: "Statutory liability is often imposed on corporations for taxes due from its stockholders or bondholders, in which case reimbursement is expressly provided for or is implied. The statutory liability of the corporation to pay the tax against stockholders carries with it an implied lien in favor of the corporation against the stock and the dividends for reimbursement. Generally, payment cannot be enforced against a corporation, where the tax is one on the stockholders, where the corporation is insolvent and in the hands of receivers."

Nat. Bank v. Commissioner, —— U.S. —— (103 SC 1134, 75 LE 2d 130) (1983). So, the tax paid by the bank is in reality a tax on the shareholder even though he realizes no constructive dividend from payment of the tax by the bank.

Our bank share tax is a tax on the shareholders. They may not escape their ultimate liability for payment of the tax when the bank, which is required in the first instance to pay the tax on their behalf, is declared insolvent. The trial court did not err in denying summary judgment on this issue.

6. We find no merit to cross-appellants' claim that our bank share tax violates the equal protection clause of the United States Constitution and the due process clauses of the United States and Georgia Constitutions.

Appellants argue there is no valid reason to subject banks to a different tax classification than other corporations. Our analysis of our bank share tax scheme in *Bartow County Bank v. Board of Tax Assessors,* 248 Ga. 703, supra, however, showed the historical basis for separate tax treatment for banks. We do not believe our state tax classification is so "palpably arbitrary" or "invidious" as to run afoul of the constitutional equal protections claimed here. See Lehnhausen v. Lake Shore Auto Parts Co., 410 U. S. 356 (93 SC 1001, 35 LE 2d 351) (1973); Allied Stores of Ohio v. Bowers, 358 U. S. 522 (79 SC 437, 3 LE 2d 480) (1959).

7. Finally, cross-appellants argue the trial court erred in failing to direct a verdict for them on the issue of the unconstitutionality of the 1975 bank share tax statute being retroactively applied to a tax date before the statute was passed.[5] We find no error.

Our bank share tax statute at issue, Georgia Laws 1975, pp. 147-153, was passed in March 1975 and stated that it did "apply to all taxable years beginning on or after January 1, 1975." Cross-appellants argue this retroactively imposed a tax on property held by the bank two and one-half months before the statute was enacted, in violation of our constitutional prohibition that "no . . . retroactive law . . . shall be passed." Ga. Const. Art. I, Sec. I., Par. VII.

We have already held that a tax enacted during a calendar year is not unconstitutionally retroactive if it relates back so as to tax for that entire year. *Fulton Bag &c. Mills v. Williams,* 212 Ga. 783 (95 SE 2d 848) (1956); *Green & Milam v. State Revenue Commr.,* 188 Ga. 442 (4 SE2d 144) (1939); *Carrol v. Wright,* 131 Ga. 728 (63 SE 260) (1908).

The trial court did not err in failing to direct a verdict for

---

[5] In reaching this constitutional issue, we are pretermitting the question of whether this issue was properly raised below.

cross-appellants on this issue.

*Judgment affirmed in part; reversed in part, and case remanded. All the Justices concur.*

DECIDED JUNE 28, 1983 —
REHEARING DENIED JULY 21, 1983.

*Webb, Daniel & Betts, Harold T. Daniel, Jr., Michael J. Bowers, Attorney General, James C. Pratt, John E. Bumgartner, Assistant Attorneys General,* for appellants.

*Gambrell & Russell, Harold L. Russell, Thomas W. Rhodes, Frederick G. Boynton,* for appellees.