A01A0605. AMENT v. BENNETT'S FINE JEWELRY et al.
(549 SE2d 501)

SMITH, Presiding Judge.

Mattie Ament brought this action against Bennett's Fine Jewelry and its proprietor, Don Bennett ("Bennett"), alleging that the store substituted a flawed diamond in a ring Ament brought in to be reset. Bennett answered and counterclaimed for its bill for the setting, appraisal, and resetting of the ring. The case was tried before a jury, and Bennett presented evidence from the owner of a jewelry business in Birmingham, Alabama, whose father, now deceased, had appraised the diamond for Ament in 1979. This witness reappraised the diamond at Bennett's request and compared a copy of the 1979 appraisal report and the diamond itself. He testified that in his opinion the stone was "without a doubt" the same as that in the ring appraised by his father in 1979.

The jury returned a verdict in favor of Bennett on Ament's claim and awarded $254.40 on Bennett's counterclaim. Ament's motion for new trial was denied, and she appeals, asserting as her sole enumeration of error the trial court's grant of Bennett's motion in limine concerning evidence of disputes between Bennett and other customers.

Finding no error, we affirm.

The evidence Ament sought to introduce concerned three incidents of complaints by other customers of Bennett. In two of the incidents, Ament made a proffer of the relevant facts; in the third, she offered the deposition of the customer. One customer complained that she delivered a ring to Bennett and Bennett lost it. Another customer contended that she had a ring repaired at Bennett's shop that later turned her finger green. No time frame was specified for either of these incidents. The remaining customer contended that approximately two and one-half to three years before Ament delivered her ring to Bennett, she brought several rings and earrings to Bennett to create a new ring out of the old stones. She decided that the work would be too expensive and asked for her jewelry back. She testified that Bennett lost one of the rings and substituted poor quality diamonds in the earrings. She sued Bennett for $3,500 for the value of the lost ring, recovering $602. She has never sued, however, for the alleged substitution of the diamonds and never made any claim for them, although on redirect examination she testified that she had "mentioned" the earrings to the trial judge in her own case. After a recess to consider the matter, the trial court excluded this evidence, but noted that it would revisit the issue if punitive damages were awarded.

"The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." OCGA § 24-2-2.

> Testimony as to what appellee had done in the past and on other jobs has little bearing on what happened in the transaction in question. In a controversy between two persons regarding a given subject matter, evidence as to what occurred between one of them and a third person with reference to a similar, though entirely distinct, transaction is irrelevant.

(Citations and punctuation omitted.) *Complete Trucklease v. Auto Rental & Leasing*, 160 Ga. App. 568, 571 (3) (288 SE2d 75) (1981). While evidence of "similar fraudulent schemes" may be admissible to demonstrate "fraudulent intent in the transaction in controversy," *Deckner-Willingham Lumber Co. v. Turner*, 171 Ga. 240, 244 (1) (155 SE 1) (1930), this exception is not without limits: "To render such evidence admissible, it must be shown that the other transactions were fraudulent, and it must appear that they were so connected in point of time and otherwise with the one in issue as to make it apparent that all were proposed or carried out in pursuance of a common

fraudulent purpose." (Citations omitted.) Id.

The admission or exclusion of collateral evidence by the trial court is reviewed under an abuse of discretion standard. *Roberts v. Gunter*, 251 Ga. 276, 281 (4) (304 SE2d 369) (1983). Here, with respect to two of the incidents sought to be admitted, Ament introduced no evidence whatsoever regarding the time at which they occurred, nor did she demonstrate any factual connection to the dispute in this case. The third incident occurred between two and one-half to three years earlier, a lapse of time from which the trial court, in its discretion, could have concluded that it was not "so connected in point of time" as to show a "common fraudulent purpose." *Deckner-Willingham Lumber*, supra at 244.

Although the witness belatedly accused Bennett of similar conduct to that at issue here, those accusations were not included in her legal action against Bennett, and she acknowledged that she had never pursued this claim. This testimony was seized upon by Bennett to dispute the witness's allegations, and the admission of such evidence would have required the jury to make a determination of the merits of this collateral claim in addition to those of the main claim before it.

> Although evidence of collateral matters may throw some remote light on the main issues of the cases, it is nevertheless necessary that trial judges be vested with some discretion as to the admissibility of this type of evidence. Otherwise, the whole course and progress of the trial could become converted to the determination of collateral issues rather than the main one.

(Citation and punctuation omitted.) *Roberts*, supra at 281. In view of the great latitude given the trial court in controlling the admission of evidence on collateral issues, *Witt v. Robbins*, 163 Ga. App. 182, 184 (4) (292 SE2d 894) (1982), we cannot say that the trial court abused its discretion in excluding this evidence from consideration.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED MAY 23, 2001.

*Gilbert J. Murrah,* for appellant.
*Smith & Perry, Ralph C. Smith, Jr.,* for appellees.