## 35519. CITIZENS & SOUTHERN NATIONAL BANK v. FULTON COUNTY et al.

HILL, Justice.

Citizens & Southern National Bank (hereinafter C&S) is a national banking association organized under the laws of the United States and located in the State of Georgia. In 1975 the City of Atlanta and Fulton County assessed taxes on C&S's tangible and intangible personal property, including motor vehicle taxes. C&S paid the taxes under protest and filed tax refund claims with the city and the county. When these claims were not allowed, C&S filed complaints for tax refunds pursuant to Code Ann. § 92-3902a (Ga. L. 1975, p. 774 as amended). The actions were consolidated in the trial court. C&S filed a motion for summary judgment which was denied; the county and the city filed cross motions for summary judgment which were granted. C&S then filed this appeal from the grant of the motions against it and from the denial of its motion. There are no disputed facts.

At issue in this appeal is the appropriate construction of the phrase "No tax shall be assessed upon the capital of banks or banking associations . . ." in Ga. L. 1975, pp. 147, 149. (This clause will be referred to here as the "no tax on capital" clause. The predecessors of this provision will be found in Ga. L. 1876, pp. 134, 136; Ga. L.

---

would not necessarily show a violation of the rights of the one whose application was denied.

1909, pp. 36, 70; and Ga. L. 1927, pp. 56, 99.)[1]

The "no tax on capital" clause first appeared in the Georgia Bank Share Tax Act in 1876. Ga. L. 1876, pp. 134, 136-137. Georgia apparently adopted its law exempting bank "capital" and taxing the shares of the stockholders of banks to comply with federal law, under which such share taxes and ad valorem real estate taxes were the exclusive methods by which states could tax national banks. National Bank Act of 1864, 13 Stat. 111-12; see People v. Weaver, 100 U. S. 539 (25 LE 705) (1879); People v. The Commissioners, 4 Wall. 244, 71 U. S. 244 (1866).[2]

The federal statute authorizing state taxation of national banks was subsequently expanded to allow taxation by any one of four alternative methods, one of which was a bank share tax, plus ad valorem taxes on real property, codified at 12 USC § 548, 42 Stat. 1499 (1923); 44 Part 2 Stat. 223 (1926). Thus, because of the federal restrictions on state taxation of national banks, Georgia's Bank Share Tax Act, which opens with the "no tax on capital" clause, had the effect of exempting national banks from any other state taxation. This exemption has apparently been allowed to state banks as well, see *City of Moultrie v. Moultrie Bkg. Co.*, 177 Ga. 714, 718 (171 SE 131) (1933), even before the enactment of former Code Ann. § 92-2406.1 (Ga. L. 1952, p. 46), by which the General Assembly declared "the policy of the State that all taxation shall be equalized as between State and National banks."

---

[1]This decision is applicable only to the year 1975 as will be seen below. See Ga. L. 1976, pp. 405, 407, 408.

[2]In the landmark case on the implied powers of Congress, McCulloch v. Maryland, 4 Wheat. 316, 17 U. S. 316 (1819), Chief Justice John Marshall declared that Congress had the power, albeit not an enumerated power, to incorporate a bank, and that a Maryland law imposing a tax on the circulating notes of banks not chartered by the Maryland legislature was unconstitutional. The opinion excepted from its scope real property taxes uniformly assessed and taxes on bank shareholders.

This statutory scheme continued in force until 1973 when the former National Bank Tax Act of 1864 was repealed and replaced by the statute currently codified at 12 USC § 548, which provides that "For the purpose of any tax law enacted under authority of the United States or any State, a national bank shall be treated as a bank organized and existing under the laws of the State or other jurisdiction within which its principal office is located." 83 Stat. 434 (1969).[3]

In response to this broadened permission to tax national banks, Georgia adopted an Act pursuant to which national and state banks would be taxed in the same manner as private domestic corporations organized for profit. Ga. L. 1973, p. 924 (hereinafter the 1973 Act). Because of the diversion of revenue from local to state government this enactment would create, the 1973 Act provided that it was not to take effect until January 1 of the year after the Intangible Tax Equalization Fund created in section 3(j) was funded by the General Assembly. Section 3(j) of the 1973 Act provided that this fund was "to be funded in fiscal year 1974 in the amount of $3.5 million and annually thereafter in an amount to be determined by the General Assembly. . ." No appropriation was made to this fund for fiscal year 1974, but $26,920 was appropriated in 1974 for fiscal year 1975. Ga. L. 1974, pp. 1508, 1611. The Attorney General ruled that this appropriation triggered the effective date of the Act. Opinion 74-136, 1975 Op. Atty. Gen. 288, Part (1). We agree with that opinion. Moreover, the 1974 appropriation for fiscal year 1975 can only be construed as a legislative determination to trigger the 1973 Act in accordance with its provisions. Although the 1973 Act could be construed, as C&S insists it should be construed, to require an appropriation of $3.5 million for fiscal year 1974 absent which the entire 1973 Act lapsed, such

---

[3]Under the 1969 amendments to the National Bank Tax Act, certain interim provisions not at issue here were effective from the date of the amendments until January 1, 1972 (later amended to January 1, 1973) when the amendment quoted above took effect.

construction would fly in the face of the General Assembly's clear expression of intent to trigger the 1973 Act by appropriating $26,920 for that purpose.

At this point, with the 1973 Act having taken effect on January 1, 1975, the General Assembly reenacted the former Bank Share Tax Act, effective January 1, 1975. Ga. L. 1975, pp. 147, 152-153 (the 1975 Act). The dispute between C&S and the city and county is whether the "no tax on capital clause" in the 1975 Act, Ga. L. 1975 at p. 149, exempts national banks such as C&S from all ad valorem taxes other than those authorized by the Act. C&S takes the position that "capital" in this phrase means "capital assets" and exempts all property of the bank except real property. The city and the county argue that the "no tax on capital" provision is merely a recital (i.e., is surplusage) or, alternatively, that capital as used therein means only capital stock. Although the word "capital" is not defined in the Act and more than one construction is arguable, in light of the legislative history we hold that "capital" as used in the "no tax on capital" clause in the 1975 Act refers to capital assets; thus the 1975 Act does exempt C&S from ad valorem taxes levied on its personal property. If the General Assembly had intended to alter the long standing effect of the "no tax on capital" clause, it no doubt would have done so in clear and express terms. By using the historical language, it evidenced its intent that banks be given the same tax treatment they historically had received.

The city and the county argue that the express exemption of banks from the assessments authorized by the Intangible Property Tax Act of 1937 militates against this construction. Ga. L. 1937-1938, Ex. Sess., pp. 156, 158. But this express exemption was necessary to avoid a possible repeal by implication of the banks' pre-existing exemption under the Bank Share Tax Act.

The city and county also argue that the General Assembly's 1976 amendments expressly recreating the banks' exemption from personal property taxes, Ga. L. 1976, pp. 405, 407, 408, establish that the 1975 Act provided no such exemption. In our view, the General Assembly by enacting this amendment was merely clarifying the 1975 Act in response to the attempted

assessment of the bank's personal property. We view this amendment as reenacting the Bank Share Tax Act rather than as undercutting it. We find that it was the intent of the General Assembly in the 1975 Act, as it was in the 1976 Act, not to tax national banks to the extent now authorized by Congress.

The trial court's order granting summary judgment to the City of Atlanta and to Fulton County must be reversed, and an order granting summary judgment entered on the motion filed by C&S.

*Judgment reversed. All the Justices concur, except Marshall, J., who concurs in the judgment only, and Nichols, C.J., who is disqualified.*

ARGUED OCTOBER 10, 1979 — DECIDED FEBRUARY 19, 1980 — REHEARING DENIED MARCH 13, 1980.

*Alston, Miller & Gaines, G. Conley Ingram, Franklin R. Nix, Michael G. Wasserman,* for appellant.

*James A. Barnett, Harold T. Daniel, Jr.,* for appellees.