37868. BARTOW COUNTY BANK v. BARTOW COUNTY BOARD OF TAX ASSESSORS et al.
37869. CITIZENS & SOUTHERN BANK OF BARTOW COUNTY v. BARTOW COUNTY BOARD OF TAX ASSESSORS et al.
37870. FIRST NATIONAL BANK OF CARTERSVILLE v. BARTOW COUNTY BOARD OF TAX ASSESSORS et al.

HILL, Presiding Justice.

This appeal raises the question of whether Georgia's bank share tax violates the supremacy clauses of the U. S. and Georgia Constitutions. U. S. Const. Art. VI, Cl. 2 (Code Ann. § 1-602); Ga. Const. Art. XI, Sec. I, Par. I (Code Ann. § 2-6801).

The question has its origin in McCulloch v. Maryland, 4 Wheat. (17 U. S.) 316 (1819), where the Supreme Court in the landmark opinion by Chief Justice John Marshall held a state tax on notes issued by a branch of the Bank of the United States to be unconstitutional, saying (4 Wheat. (17 U. S.) at 436): "[T]he states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared."

As a historical consequence of the freedom of national banks from state taxation, national banks (and to make them competitive, state banks) in Georgia pay no income taxes, pay no tangible or intangible property taxes, and pay no franchise or business license

taxes.[1] Banks are taxed on their real property, real estate transfers and sales and uses, and their stockholders are taxed on the bank's shares. It is the bank share tax which is in issue here.

The validity of a bank share tax, if not discriminatory against national banks, was upheld in Van Allen v. The Assessors, 3 Wall. (70 U. S.) 573 (1865). Our bank share tax is a tax, remitted by the bank, imposed on the value of the shares of a bank issued to its stockholders, which value includes the bank's investment in stocks and bonds of the United States. *Daniel v. Bank of Clayton County,* 154 Ga. 282 (1) (114 SE 210) (1922).

Georgia's bank share tax at present reads in pertinent part as follows, Code Ann. § 91A-3301, Ga. L. 1978, pp. 309, 523: "(a)(1) No tax shall be assessed upon the capital of banks or banking associations organized under the authority of this State or of the United States located within this State, but the shares of the stockholders of the banks or banking associations, whether resident or nonresident owners, shall be returned and taxed at their fair market value which is hereby fixed and shall be determined by adding together the amount of the capital stock, paid-in capital, appropriated retained earnings, and retained earnings as defined in the Financial Institutions Code of Georgia (Title 41A) and as shown on the unconsolidated statement of condition of the bank or banking association as of January 1 next preceding the date of making the return as required in this section and dividing the result by the number of outstanding shares, at the same rate provided by law for the taxation of tangible personal property in the hands of private individuals." Thus the tax is upon the bank's shareholders rather than the bank itself, although the value of those shares is based upon the capital (net worth) of the bank.

The act authorizes as deductions from the fair market value of the shares (net worth of the bank) real estate taxed separately, investments in subsidiary banks taxed under the act, undistributed earnings of other subsidiaries subject to Georgia corporate taxes, and reasonable capital reserves. Code Ann. § 91A-3301 (a) (2). The act does not provide for deduction of U. S. government securities.

The Bartow County Bank, a state bank, filed with the local taxing authorities its 1980 "Determination of Taxable Value of Bank Shares." This return showed a total capital or net worth of

---

[1] Code Ann. §§ 91A-3301 (d) (g), 91A-3303, 91A-3306. These exemptions from taxation were mandated by federal law up until 1969. See 12 USC § 548, as amended. See also *C.&S. Nat. Bank v. Fulton County,* 245 Ga. 441 (265 SE2d 559) (1980).

$902,243.85 and total deductions of $950,548.21, which reduced the taxable value of the bank's shares to zero. In making the deductions, the bank included as a deduction the net book value of bank-owned U. S. government securities in the sum of $543,800.92. The Bartow County Board of Tax Assessors disallowed this deduction and determined that the taxable value of the bank's shares therefore was $495,496.56. The bank appealed to the Bartow County Board of Tax Equalization, contending that the federal securities held by the bank were exempt from state taxation under federal law. The Board of Equalization ruled in favor of the bank, the majority of the Board finding that federal securities are not taxable. The Bartow County Board of Tax Assessors appealed the decision of the Board of Equalization to the Superior Court of Bartow County.

The C&S Bank of Bartow County, a state bank, and the First National Bank of Cartersville, a national bank, had also filed 1980 returns deducting the value of federal securities, which deductions reduced the value of C&S bank shares to zero and reduced the value of First National bank shares to $557,187. These deductions were disallowed by the Bartow County Board of Tax Assessors and these two banks also appealed to the Board of Equalization but because different panels heard the cases, the untenable result at the Board of Equalization level was a decision in favor of the Bartow County Bank but against the other two banks.[2] The other two banks appealed to the Superior Court of Bartow County, where all three cases were consolidated and heard jointly.

The State Revenue Commissioner then moved, and over the banks' objections was allowed, to intervene. The trial judge issued a lengthy order reviewing the authorities, finding that the share tax act is not unconstitutional and concluding that the banks were not entitled to deduct the value of federal securities in determining net worth for imposition of share tax. The banks appeal.

1. The principal issue in this case is the constitutionality of Georgia's bank share tax act, Code Ann. § 91A-3301; Ga. L. 1978, pp. 309, 523, supra, which provides for the taxation of bank shares held by stockholders based on the net worth of a bank without subtracting the value of federal securities owned by the bank. The banks contend that the bank share tax is in contravention of 31 USCA § 742, as amended by Pub. L. 86-346, and therefore violates the supremacy clauses of the United States Constitution and the Constitution of the State of Georgia. U. S. Const. Art. VI, Cl. 2 (Code Ann. § 1-602); Ga.

---

[2] Apparently the panels differed because certain Board members were disqualified in certain cases.

Const. Art. XI, Sec. I, Par. I (Code Ann. § 2-6801).[3]

The banks contend that the tax act should be declared unconstitutional in its entirety, or that this court could render the statute constitutional by allowing banks to deduct the value of the U. S. obligations owned by the banks.[4] The Revenue Commissioner contends that the banks are seeking to obtain a double or duplicative exemption. The Commissioner argues that the shares of a bank with $1 million in capital and $1 million in deposits which loans its capital to private enterprises and purchases federal securities with the money on deposit would, if the bank's position were valid, not be subject to the tax because the federal securities would be offset against the bank's capital of $1 million which would otherwise be taxable.

As noted above, the banks contend that the share tax act violates federal law and thereby violates the supremacy clause of the Constitution. Our review involves two federal laws, 12 USC § 548 and 31 USC § 742, and their predecessors. But our first inquiry is as to the cases which were the progeny of McCulloch v. Maryland, supra.

In Osborn v. President, Directors and Co. of the Bank of U. S., 9 Wheat. (22 U. S.) 738, 868 (1824), also written by Marshall, C. J., the Court declined to overrule McCulloch v. Maryland, supra, and held a state statute levying a tax on the Bank of the United States, a federal instrumentality, to be unconstitutional.

In Weston v. City Council of Charleston, 2 Peters (27 U. S.) 449, 469 (1829), again written by Marshall, C. J., the Court applied McCulloch v. Maryland and held a city ordinance which levied a personal property tax on bonds, notes, insurance stock, and stock issued by the United States, to be invalid as to stock of the United States.

In Bank of Commerce v. Commissioners of Taxes of the City and County of N. Y., 2 Black (67 U. S.) 620 (1862), in an opinion written by Nelson, J., the Court applied Weston v. City of Charleston, supra, and held that a state tax could not be imposed on the value of the capital

---

[3] We perceive no meaningful difference between the U. S. and Georgia Constitutions. The U. S. Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

The Georgia Constitution provides: "The laws of general operation in this State are, first: As the Supreme law: The Constitution of the United States, the laws of the United States in pursuance thereof. . . ."

[4] Holding the act unconstitutional in its entirety might subject the banks to income and tangible property taxes, among others. See Code Ann. § 91A-3301 (d) (g).

of a state bank which consisted partially or entirely of stock of the United States.

In the Bank Tax Case, 2 Wallace (69 U. S.) 200 (1864), also written by Nelson, J., the Court held that the New York Legislature could not avoid Bank of Commerce v. The Commissioners of Taxes of the City and County of New York, supra, by imposing the tax "on a valuation equal to" the amount of the bank's capital stock, as opposed to the tax on the actual value of the capital stock held invalid in Bank of Commerce.

In 1862, Congress authorized the Secretary of the Treasury to issue notes and bonds, and provided that " . . . all stocks, bonds, and other securities of the United States held by individuals, corporations, or associations, within the United States, shall be exempt from taxation by or under state authority." Act Feb. 25, 1862, c. 33, § 2, 12 Stat. 346. It was this act which was the forerunner of 31 USC § 742 and it was this act which was referred to by the Reporter in Van Allen v. The Assessors, supra, 578, 579. At issue directly in Van Allen was § 41 of the National Bank Act, Act June 3, 1864, c. 106, 13 Stat. 111, which is the predecessor of 12 USC § 548, also involved in the case before us.

The National Bank Act provided for the organization of national banking associations and required that at least one-third of the capital of a national bank be invested in bonds of the United States. Section 41 of that act (as amended in 1864) provided, among other things, that the act was not to be construed to prevent "all the *shares* in any of the said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under State authority. . . ." Act June 3, 1864, c. 106, 13 Stat. 111. (Emphasis supplied.) New York promptly enacted a bank share tax.[5] Van Allen was a shareholder in the First National Bank of Albany and all of the capital of that bank was invested in obligations of the federal government.

In Van Allen v. The Assessors, supra, the majority opinion was written by Justice Nelson, who authored Bank of Commerce v. The Commissioners of Taxes of the City and County of New York and the Bank Tax Case, supra. The principal question decided was " . . . whether the State possesses the power to authorize the taxation of the shares of these national banks in the hands of stockholders, whose capital is wholly vested in stock and bonds of the United States?" (at p. 582). The majority found the previous bank cases (holding

---

[5] Georgia enacted its first bank share tax in 1876. Ga. L. 1876, pp. 134, 136.

unconstitutional state taxes on bonds of the United States which constitute the capital of a bank) not applicable (at p. 583). The majority found that no question as to the pledged faith of the government was involved, that the authority of the states, under the act of Congress, to tax the shares was a condition on the exercise of the rights and privileges conferred on national banking associations, and that the tax on the shares was not a tax on the capital of the bank invested in government securities because the corporation, not its shareholders, owned the assets of the bank (at pp. 583-584). The majority held that the state bank share tax was not unconstitutional by reason of the fact that the capital of the bank was invested in federal securities. The Court did find, however, that the New York share tax was defective in that it was imposed on shares of national banks whereas the tax on the capital of state banks necessarily exempted bonds of the United States. The Court noted that this defect could be readily remedied by the state legislatures (at p. 581) (thereby leading to state share taxes on both national and state banks).

Chief Justice Chase and Justices Wayne and Swayne dissented, saying that the tax was an indirect tax on bonds of the United States, that McCulloch v. Maryland and its progeny cited above should be applied, and that Congress did not intend by authorizing the share tax to include federal obligations.

In People v. The Commissioners, 4 Wall. (71 U. S.) 244 (1866), New York's revised bank share tax applicable to both state and national banks was upheld, with Chase, C. J., and Wayne and Swayne, JJ., dissenting.

In 1868 Congress amended the share tax provision of § 41 of the National Bank Act to provide, among other things, that " . . . the legislature of each State may determine and direct the manner and place of taxing all the shares of national banks located within said State. . . ." Act Feb. 10, 1868, c. 7, 15 Stat. 34. The amendment did not exempt obligations of the United States from the share tax. That apparently ended the dispute as to the validity of the inclusion of federal securities in the share tax because in National Bank v. Commonwealth, 9 Wall. (76 U. S.) 353 (1869), the Court in a unanimous opinion which was joined by Chase, C. J., and Swayne, J., reaffirmed the right of the states to tax bank shares even though all the bank's capital be invested in federal securities.

In 1878, when the statutes were revised, the law stood as follows: The Act of Feb. 25, 1862, c. 33, s. 2, 12 Stat. 346, and its progeny provided: "All stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority." R.S. § 3701 (this provision will be

identified as "the exemption"). The bank share tax provision as to national banks read: "Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State. . . ." R.S. § 5219 (this provision will be identified as "the authorization").

Although the tax exemption provision had been in effect when Van Allen was decided, the opinion of the Court itself did not refer to that exemption. In Cleveland Trust Co. v. Lander, 184 U. S. 111 (22 SC 394, 46 LE 456) (1902), the trust company deducted the value of its bonds of the United States in declaring the share tax authorized by R. S. § 5219, claiming the exemption of R. S. § 3701. The Court found against the trust company, saying (184 U. S. at 115): "The answer to the contention is obvious and may be brief. The contention destroys the separate individuality recognized, as we have seen, by this court, of the trust company and its shareholders, and seeks to nullify one provision of the Revised Statutes of the United States (section 5219) by another (section 3701), between which there is no want of harmony."

In Des Moines Nat. Bank v. Fairweather, 263 U. S. 103, 114 (44 SC 23, 68 LE 191) (1923), the Court referred to the Van Allen ruling, saying it "is now settled law in this court" (citations omitted). In Society for Savings in the City of Cleveland v. Bowers, 349 U. S. 143, 148 (75 SC 607, 99 LE 950) (1955), after referring to the exemption recognized by R. S. § 3701, 31 USC § 742, the Court cited Van Allen and subsequent cases, saying " . . . this exception to the general rule of immunity is firmly embedded in the law."

In the case now before us, the banks contend that the exemption of R. S. § 3701, 31 USC § 742, was extended so as to overrule Van Allen, when the exemption was amended in 1959 by addition of the following: "This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes." 31 USC § 742, as amended by Pub. L. 86-346.

However, in 1959 when the exemption was amended, R. S. § 5219, 12 USC § 548, expressly authorized the bank share tax, which included the value of U. S. obligations. We can say with confidence that had this case arisen before the authorization of 12 USC § 548 was

amended in 1969, the Supreme Court of the United States would have said: The answer to the banks' contention is obvious and may be brief. The contention destroys the separate individuality recognized, as we have seen, by the Court, of the bank and its shareholders, and seeks to nullify one provision of the statutes (R. S. § 5219; 12 USC § 548) by another (R. S. § 3701; 31 USC § 742), between which there is no want of harmony. Cleveland Trust Co. v. Lander, supra, 184 U. S. at 115.

The share tax authorization, 12 USC § 548, was amended in 1969 to provide simply: "For the purpose of any tax law enacted under authority of the United States or any State, a national bank shall be treated as a bank organized and existing under the laws of the State or other jurisdiction within which its principal office is located." Pub. L. 91-156. This amendment was intended to allow the states to tax national banks like state banks, rather than to prescribe how states could tax national banks (and state banks as well). This amendment does not prohibit bank share taxes. Bank of Texas v. Childs, 615 SW2d 810, 824-826 (Tex. Civ. App. 1981).

Since 1959, the exemption of 31 USC § 742 has read: "Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes."[6]

The banks argue that this amendment was intended to extend the exemption allowed owners of government securities to shareholders of corporations owning government securities because the share tax requires that government obligations be "considered," directly or indirectly, in the computation of the tax. The banks then argue that the first rule of statutory construction is to consider the

---

[6] The banks insist that since the introductory clause, "Except as otherwise provided by law," does not appear in Revised Statutes § 3701 but was, instead, inserted by the codifiers of the 1926 Code, and since this section of the United States Code has not been enacted into positive law, the clause is not part of the statute. The Revenue Commissioner points out that the Supreme Court has cited 31 USC § 742, including the words "Except as otherwise provided by law," Society for Savings in the City of Cleveland v. Bowers, 349 U. S. 143, 144 (75 SC 607, 99 LE 950) (1955), and argues that these words should be given force and effect. We find it unnecessary to resolve the question because we reach the same result whether or not this statute is introduced by the "Except . . ." clause. The two provisions in issue here are in harmony, Cleveland Trust Co. v. Lander, supra, and thus there is no repeal by implication. Since here we quote USC, we include the clause in the quotation.

text of the law and if the text is clear, then there is no need for construction. This overlooks the cardinal rule of statutory interpretation which is to ascertain the intent of the legislative body and when that intent is clear, to carry it into effect even though seemingly contrary to the literal sense of the terms. *Thacker v. Morris,* 196 Ga. 167, 173 (26 SE2d 329) (1943). The federal rule is the same. United States v. Amer. Trucking Assns., 310 U. S. 534, 542-544 (60 SC 1059, 84 LE 1345) (1940).

Was it the intent of Congress in enacting the 1959 amendment to the exemption of 31 USC § 742 to undo the balance finally achieved between state and national banks? Was it the intent of Congress to overrule Van Allen and 94 years of "settled law," Des Moines Bank v. Fairweather, supra, 263 U. S. 103, 114? Was it the intent of Congress to repeal an exemption which has become "firmly embedded in the law," Society for Savings in the City of Cleveland v. Bowers, supra, 349 U. S. 143? We find that the existence from 1959 to 1969 of the exemption of R. S. § 3701, 31 USC § 742 as amended in 1959, side by side with the share tax authorization of R. S. § 5219, 12 USC § 548 (before the 1969 amendment), shows that Congress did not intend in 1959 to repeal the share tax authorization, including the value of government securities owned by the corporation. We agree with the reasoned conclusion of the trial judge in this case: "This court does not believe the Congress of the United States would sweep away the Van Allen rule and the bank share tax system of the various states without making a clear statement of its intention to do so."[7] This conclusion is reinforced by the legislative history of the 1959 amendment to the exemption, 31 USC § 742, as well as the 1969 amendment to the tax authorization, 12 USC § 548.[8]

We therefore hold that Georgia's bank share tax act, Code Ann. § 91A-3301, Ga. L. 1978, pp. 309, 523, which provides for taxation of bank shares based on the net worth of the bank without subtracting the value of federal securities owned by the bank, is not in contravention of 31 USC § 742 as amended in 1959 by Pub. L. 86-346, and does not violate the supremacy clause of the U. S. and Georgia Constitutions. In so doing, we follow Bank of Texas v. Childs, 615 SW2d 810, supra, and decline to follow Montana Bankers Assn. v.

---

[7] Such wide-reaching changes as the banks urge here may be accompanied by delayed effectiveness and transition provisions. See 1969 U. S. Code Cong. & Ad. News Pt. 2, pp. 1594, 1597.

[8] The legislative history of the 1959 amendment to the exemption, 31 USC § 742, shows that its purpose was to exempt income on federal obligations from the computation of gross income in state income taxes imposed by one state. 1959 U. S. Code Cong. & Ad. News Pt. 2, pp. 2769, 2773.

Montana Dept. of Revenue, 580 P2d 909 (Mont. S. Ct. 1978).

2. The trial court did not abuse its discretion in allowing the State Revenue Commissioner to intervene under Code Ann. § 81A-124 (b).

3. The remaining arguments advanced by the banks and by amicus curiae comprise constitutional attacks on Code Ann. § 91A-3301 (a) (1) that were not raised in the superior court or were not enumerated as error, and therefore are not cognizable on this appeal.

*Judgment affirmed. All the Justices concur, except Marshall, J., not participating.*

DECIDED JANUARY 6, 1982.

*William Morgan Akin, Warren Akin,* for appellant (case no. 37868).

*Michael J. Bowers, Attorney General, James C. Pratt, Assistant Attorney General, Crane & Jones, Herbert M. Crane, Bradley & Nelson, Stephen R. Bradley, Carey Nelson,* for appellees (case no. 37868).

*Herbert M. Crane, Jr.,* for appellants (case nos. 37869, 37870).

*Michael J. Bowers, Attorney General, James C. Pratt, Assistant Attorney General, William Morgan Akin, Warren Akin, Carey Nelson, Steve Bradley,* for appellees (case nos. 37869, 37870).

*L. Trammell Newton, Jr., W. Stell Huie, C. Wilson DuBose,* amici curiae.