S98A0549, S98A0694. EARLY v. EARLY (two cases).
(499 SE2d 329)

HUNSTEIN, Justice.

We granted Anna Early's application for discretionary appeal to consider whether the trial court erred by entering an order declining to exercise jurisdiction over Robert Early's petition for modification of child support, in light of the provisions of the Full Faith and Credit for Child Support Orders Act (FFCCSOA), 28 USC § 1738B. Because we conclude that the FFCCSOA does not grant a court of the state that issued a child support order the discretion to decline to exercise jurisdiction over a child support modification action, we reverse.

The parties to this appeal were divorced in Georgia in 1987. Appellant Anna Early was granted sole custody of the couple's one minor child. Shortly after the decree was modified in Georgia in 1990, appellant and the child moved to California, where they have since resided. In August 1996, the Georgia court held that California was the appropriate forum to determine issues that had arisen between the parties over child custody and visitation under the Uniform Child Custody Jurisdiction Act (UCCJA), OCGA § 19-9-40 et seq. In 1997, appellee Robert Early filed a petition for modification of child support in Georgia, asserting that he had voluntarily submitted himself to the jurisdiction of the California court for the purpose of that court determining both custody and support issues, but the California court had declined under the FFCCSOA to exercise jurisdiction over appellee's motion to modify child support, giving as reasons the fact that a Georgia court had issued the last child support order,[1]

---

[1] It is uncontroverted that the Georgia child support order was entered consistent with the provisions of the FFCCSOA. See 28 USC § 1738B (c).

appellee still resided in Georgia, and appellant had declined to consent to jurisdiction over the modification action by the California court. See 28 USC § 1738B (e). Appellee thus moved the Georgia court to enter an order declining to exercise jurisdiction over the modification of support issue so that the California court could assume jurisdiction thereof.

Under subsection (d) of the FFCCSOA, a court of a state that has made a child support order consistent with that section, "has continuing, exclusive jurisdiction over the order if the State is the child's State or the residence of any individual contestant" unless the court of another state was authorized pursuant to subsections (e) (f) or (i) of the FFCCSOA to make a modification of the order. Id. at (a), (d). Because Georgia is the only state to have issued a valid child support order, appellee remains a resident of Georgia, and appellant has declined to consent to a state other than Georgia modifying the order, subsections (e), (f), and (i) are, by their express terms, not applicable to this appeal so as to divest the Georgia court of its exclusive, continuing jurisdiction.

In its order, the trial court first reiterated that it did not have jurisdiction over the parties' custody and visitation issues because under the UCCJA Georgia is no longer the home state of the child and the child has no significant connections with this State. OCGA § 19-9-43 (a) (1), (2) (A). The trial court then recognized the jurisdictional distinctions between custody issues under the UCCJA and support issues under the FFCCSOA, as well as the absence of any language in the latter statute providing for discretion in the state with continuing, exclusive jurisdiction over a support order to decline to exercise jurisdiction over the subject. The trial court, however, determined that a literal reading of the FFCCSOA would lead to impractical results inconsistent with the intent of the support act, which the trial court gleaned from various Congressional publications.

In construing a statute, "the determining factor is the intent of the legislature and we look first to the words of the statute to determine what that intent was and if those words be plain and unambiguous and the intent may be clearly gathered therefrom, we need look no further in determining what that intent was." *Stone Mountain Mem. Assn. v. Herrington*, 225 Ga. 746, 749 (2) (171 SE2d 521) (1969). Indeed, "where the language of an Act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden. [Cit.]" *City of Jesup v. Bennett*, 226 Ga. 606, 609 (2) (176 SE2d 81) (1970). Accord *Connecticut Nat. Bank v. Germain*, 503 U. S. 249, 254 (112 SC 1146, 117 LE2d 391) (1992) ("[w]hen the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: 'judicial inquiry is complete.' [Cits.]").

Applying these principles to the FFCCSOA, we find the statu-

tory language is plain and unambiguous in its requirement that the court of the state that last made a child support order consistent with the FFCCSOA has continuing, exclusive jurisdiction over the order where, as here, one of the parties to the order continues to reside in the state, id. at (d), unless each individual contestant has filed written consent with the state of continuing, exclusive jurisdiction for a court of another state to modify the order and assume continuing, exclusive jurisdiction over the order, id. at (e) (2) (B), or one of the other provisions in subsections (e), (f), or (i) applies. As subsection (a) specifically provides, the "appropriate authorities of *each State* . . . (2) shall not seek or make a modification of [a child support] order except in accordance with subsections (e), (f), and (i)." (Emphasis supplied.) Subsections (e), (f), and (i) do not authorize the state last issuing a child support order consistent with the FFCCSOA to decline to exercise its exclusive, continuing jurisdiction over support issues while one party continues to reside in the state and the nonresident party chooses not to consent to jurisdiction in another state. Nothing in the FFCCSOA places discretion in a court of the state with exclusive, continuing jurisdiction over a child support order to decline that jurisdiction over objection by a nonresident party. Indeed, any such discretion in the trial court would necessarily obviate the discretion explicitly given by subsection (e) (2) (B) to the individual contestants themselves to decide whether or not to consent to another state obtaining jurisdiction over support issues.

Contrary to the trial court's position, a literal interpretation of the FFCCSOA is not inconsistent with the purposes of the FFCC-SOA, since a strict application of the statutory language retains in the court of the state with continuing, exclusive jurisdiction the authority to enforce the child support orders it rendered; it eliminates any continuing interstate controversies over whether or not a court of the state with continuing, exclusive jurisdiction may or may not decline to exercise jurisdiction over a particular order before it; and it draws a bright line rule which clarifies that a court of the state with continuing, exclusive jurisdiction over a child support order will in every instance maintain that continuing, exclusive jurisdiction until one of the provisions in subsections (e), (f), or (i) is applicable. See P.L. 103-383, § 2 (c), 108 Stat. 4063. We note that although there is considerable foreign case law addressing the application of the FFCCSOA, appellee has not referenced, nor has research uncovered, any reported foreign decision recognizing a right in the state that issued the support order to decline jurisdiction over a modification action in a situation where the parties to the order disagree to that state maintaining its continuing, exclusive jurisdiction over the order.

While we appreciate the trial court's concern for judicial econ-

omy in this case and recognize that litigating the custody issues in one state and the support issues in another state may be inconvenient and expensive, this result is the direct consequence of the express provisions of the FFCCSOA and occurs in this case because appellant has exercised the discretion granted her by subsection (e) (2) (B) not to consent to the modification of the Georgia support order by another state. Nor is the result here anomalous with Georgia law, as we have recently recognized in *Holtsclaw v. Holtsclaw*, 269 Ga. 163 (496 SE2d 262) (1998), that although jurisdiction over child custody issues arising out of a divorce proceeding may be in another state pursuant to the UCCJA, a Georgia court may not decline to exercise its jurisdiction over the divorce itself. Just as the doctrine of forum non conveniens cannot be used to deprive a Georgia resident of his right to litigate his divorce action in Georgia, *Holtsclaw*, supra, that doctrine cannot be used to deprive a party of her right under the FFCCSOA to litigate the modification of a child support order in the state where the order was entered.

Therefore, because a court of this State has continuing, exclusive jurisdiction over the last child support order entered consistent with the FFCCSOA, the trial court erred by declining to exercise jurisdiction over appellee's petition to modify child support. 28 USC § 1738B.

*Judgment reversed. All the Justices concur, except Fletcher, P. J., who dissents.*

FLETCHER, Presiding Justice, dissenting.

I dissent because the majority's opinion leads to a result contrary to the intent and purpose of the Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B.

When interpreting a federal statute, it is important to avoid unreasonable results or results that are wholly inconsistent with the drafter's intent.[2] The majority's opinion ignores this principle by elevating the Act's literal language over its intent and allowing an unreasonable result. Now one party has unfettered discretion to avoid jurisdiction in his state of residence and to force separate actions in two states for custody and support for the same child.

Contrary to the majority's assertion, the Child Support Act was not intended to create a "right" to litigate child support orders in the jurisdiction of the order's origin. Rather, the legislative history of the Act reveals that the intent is to prohibit a state from modifying a support order "unless the recipient of child support payments resides

---

[2] *Public Citizen v. Department of Justice*, 491 U.S. 440, 454-455 (109 SC 2558, 105 LE2d 377) (1989); *Bartow County Bank v. Bartow County Bd. of Tax Assessors*, 248 Ga. 703, 711 (285 SE2d 920) (1982).

in the State in which the modification is sought."[3] This intent is frustrated by allowing the recipient parent to avoid jurisdiction in the state of his or her residence when the payor parent has consented to jurisdiction in that state. Additionally, the Act seeks to "discourage continuing interstate controversies over child support in the interest of greater financial stability and secure family relationships for the child."[4] The majority's reliance on the literal language of the Act encourages an interstate controversy in this case by forcing dual actions in California and Georgia over custody and support for the same child. Furthermore, the added time and expense of maintaining dual actions in two states cannot promote the interest of the child.

The intent and purpose of the Act would be fulfilled by affirming the trial court's decision to decline jurisdiction in this case.

DECIDED MAY 4, 1998.

*Koval & Associates, Steven H. Koval,* for appellant.
*Barry B. McGough,* for appellee.

---

[3] S. Rep. No. 103-361 at 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3259.

[4] S. Rep. No. 103-361 at 4 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3259.