MELISSA MATTMULLER, Petitioner-Appellee, v. DWIGHT MATTMULLER, Respondent-Appellant.

Fifth District    No. 5—00—0702

Opinion filed February 6, 2003.

Joseph R. Brown, Jr., and Christopher P. Threlkeld, both of Lucco, Brown & Mudge, of Edwardsville, for appellant.

James R. Mendillo, of Freeark, Harvey, Mendillo, Dennis, Wuller, Cain & Murphy, P.C., of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

The parties, Dwight and Melissa Mattmuller, were married in 1980. An Indiana court dissolved their marriage in 1996. Included in

the Indiana dissolution order were provisions relating to the custody of the three minor children, visitation, and child support. Dwight's employer transferred him, temporarily, to New Mexico in 1997. Melissa moved with the children to Illinois in 1998. Thereafter, she registered the Indiana dissolution judgment in Illinois and filed a petition to modify visitation and child support. Dwight filed his own petition to modify visitation and child support in Indiana, over which the Indiana court declined jurisdiction. He then filed a petition to modify custody in Illinois. While the parties' petitions were pending, Dwight returned to Indiana and Melissa moved with the children to Wisconsin. The trial court granted Melissa's petition to modify child support but deferred all remaining issues to the Indiana court that had dissolved the Mattmullers' marriage. Dwight appeals, arguing Illinois lacked subject matter jurisdiction to rule on Melissa's petition pursuant to provisions of the federal Full Faith and Credit for Child Support Orders Act (Full Faith and Credit Act) (28 U.S.C. § 1738B (1994 & Supp. 1999)). We affirm the trial court's ruling.

## I. BACKGROUND

The Mattmullers married in 1980. Three children were born during the marriage: Christina (born July 21, 1985), Tyler (born July 24, 1987), and Adam (born March 3, 1989). An Indiana trial court dissolved the parties' marriage on July 15, 1996. The dissolution order granted physical custody of the three children to Melissa and ordered Dwight to pay child support. In November 1997, Dwight moved to Las Cruces, New Mexico, but returned to LaFayette, Indiana, in June 1999. In January 1998, Melissa moved to Collinsville, Illinois, with the three children. She later moved to Milwaukee, Wisconsin. On October 8, 1998, the Indiana trial court granted Melissa's motion to dismiss all pending motions to modify the dissolution order.

On November 19, 1998, Melissa filed a petition to enroll the Indiana judgment in Illinois and a petition to modify child support and visitation in the circuit court in Madison County, Illinois. On January 15, 1999, Dwight filed a motion for a continuance and an objection to the Illinois trial court's personal jurisdiction pursuant to section 2—301 of the Code of Civil Procedure (735 ILCS 5/2—301 (West 1998)).

On February 25, 1999, the Madison County trial court denied Dwight's motion. The court found that it had personal jurisdiction over Dwight by virtue of his children's residence within the State of Illinois and that his objections to Illinois's jurisdiction over him could be resolved by applying Indiana law. The court further ruled that Dwight's compliance with discovery orders would not constitute a waiver of his objection to personal jurisdiction.

On May 7, 1999, Dwight filed a petition to modify child support and visitation and a petition for the court to assume exclusive jurisdiction with the circuit court in Tippecanoe County, Indiana. Melissa filed a motion to dismiss for inconvenient forum. On June 24, 1999, the Indiana trial court entered an order finding that Indiana was an inconvenient forum, granting Melissa's motion to dismiss, and denying Dwight's petition to assume exclusive jurisdiction. The court declined to exercise jurisdiction in the matter and deferred the action to the Madison County court. Dwight did not appeal this ruling.

On July 7, 1999, Dwight, who had by this time returned to Indiana, filed a petition to modify custody in Madison County. He requested primary physical custody of the parties' eldest daughter, Christina, who had expressed a desire to reside with her father and attend high school in LaFayette.

On February 1, 2000, Dwight filed a motion to dismiss Melissa's modification petition in Madison County. He argued that Illinois lacked subject matter jurisdiction over the proceeding. He argued that, pursuant to section 611 of the Uniform Interstate Family Support Act (750 ILCS 22/611 (West 1998)), Illinois lacks subject matter jurisdiction to modify child support where the obligor has never been a resident of the state and that the Uniform Child Custody Jurisdiction Act (750 ILCS 35/1 through 26 (West 1998)), upon which the trial court based its jurisdiction, applies only to issues involving custody, not support.

On April 10, 2000, the Madison County trial court entered an order denying Dwight's motion to dismiss and ruling that an increase in child support was appropriate. Because the appropriate amount of support would be affected by the outcome of Dwight's still-pending petition to modify the custody of Christina, the court reserved the entry of a specific order on child support; however, the court did make factual findings and determined the manner in which the specific amount of child support would be calculated.

On June 29, 2000, Melissa filed a petition to remove the children to Milwaukee, Wisconsin. On July 5, 2000, the trial court entered an order granting Melissa's petition to remove. In the same order, the court deferred to the Indiana court determination of the pending custody and visitation issues, as well as any future support modifications necessitated by Melissa's move to Wisconsin. The court, however, retained jurisdiction to enter a final order on the support-modification issue that it had already partially resolved and ruled upon. On August 23, 2000, the court entered a final order increasing support retroactive to January 1, 1999, and directing the parties to register the order in the Tippecanoe County, Indiana, superior court.

On August 25, 2000, Dwight filed a motion to reconsider the

Madison County court's July 5 order. In it, he raised the Full Faith and Credit Act for the first time. The court denied Dwight's motion on October 12, 2000. This appeal followed.

## II. ANALYSIS

### A. The Full Faith and Credit Act

Dwight argues that the Illinois trial court lacked subject matter jurisdiction to rule on Melissa's motion to modify because it did so in contravention of the Full Faith and Credit Act. In response, Melissa argues that (1) Dwight forfeited his argument that the Full Faith and Credit Act bars the Illinois court from ruling on Melissa's petition by his failure to raise it in either of his motions to dismiss, (2) the Illinois court did not violate the Full Faith and Credit Act because (a) the Indiana court declined jurisdiction and (b) Illinois's exercise of jurisdiction is in accordance with the expressed intent of Congress in enacting the Full Faith and Credit Act, and (3) Dwight is collaterally estopped from raising the issue of the proper forum state for Melissa's petition in light of the Indiana court's previous and final disposition of that issue. We agree with Melissa.

### 1. Forfeiture

■ Dwight contends that the requirements of the Full Faith and Credit Act are jurisdictional and that, therefore, he may raise them at any time. Without subject matter jurisdiction, a court lacks the inherent authority to enter an order in a given case. *People v. Wade*, 116 Ill. 2d 1, 5, 506 N.E.2d 954, 955 (1987). Dwight, therefore, is correct in arguing that a litigant does not forfeit objections to improper subject matter jurisdiction by failing to raise them at the earliest opportunity. See *People v. Davis*, 156 Ill. 2d 149, 155, 619 N.E.2d 750, 754 (1993); *Wade*, 116 Ill. 2d at 5, 506 N.E.2d at 955. We conclude, however, that the requirements of the Full Faith and Credit Act are not jurisdictional and that, therefore, Dwight forfeited his argument that Melissa cannot comply with them.

■ The circuit courts of this state are courts of general jurisdiction. *Davis*, 156 Ill. 2d at 157, 619 N.E.2d at 755. Thus, their subject matter jurisdiction is nearly plenary. Ill. Const. 1970, art. VI, § 9 ("Circuit Courts shall have original jurisdiction of *all justiciable matters* except when the Supreme Court has original and exclusive jurisdiction ***." (Emphasis added.)); *Siegel v. Siegel*, 84 Ill. 2d 212, 221, 417 N.E.2d 1312, 1316 (1981). Prior to the 1994 enactment of the Full Faith and Credit Act, the trial courts of this state had jurisdiction to modify custody and child support orders; the Act was not necessary to confer such jurisdiction on them because their jurisdiction flows

from the state constitution. *Siegel*, 84 Ill. 2d at 221, 417 N.E.2d at 1316. Rather than confer jurisdiction, the Full Faith and Credit Act tells state courts when to decline jurisdiction and defer to the courts of other states.

■ Congress enacted the Full Faith and Credit Act to facilitate the enforcement of child support orders, avoid jurisdictional conflicts between states, and discourage interstate controversies over child support in the interest of greater financial security for the children for whom support is ordered. Full Faith and Credit Act, 1994 Pub. L. No. 103—383, § 2(c), 108 Stat. 4063. Many of its provisions parallel those of previously existing state legislation designed to effectuate the same purpose. The courts of this state have recognized that the use of the word "jurisdiction" in such legislation does not refer to subject matter jurisdiction but, rather, refers to a statutory limitation on the exercise of existing jurisdiction. See *Siegel*, 84 Ill. 2d at 221, 417 N.E.2d at 1316; *In re Marriage of Arulpragasam & Eisele*, 304 Ill. App. 3d 139, 147, 709 N.E.2d 725, 731 (1999); *In re Marriage of Alexander*, 252 Ill. App. 3d 70, 72, 623 N.E.2d 921, 923 (1993); but see *Richardson v. Richardson*, 255 Ill. App. 3d 1099, 1105-06, 625 N.E.2d 1122, 1127 (1993) (Barry, J., specially concurring) ("The majority correctly notes that jurisdiction over custody matters is to be *determined* not by traditional concepts of subject matter jurisdiction, but by consideration of *** the Uniform Child Custody Jurisdiction Act." (Emphasis added.)). We conclude, therefore, that Dwight has forfeited his argument that the Madison County court failed to comply with the statutory limitations on its exercise of existing jurisdiction under the Full Faith and Credit Act.

### 2. The Effect of the Indiana Court's Decision to Decline Jurisdiction

Even were we to conclude that Dwight did not forfeit his Full Faith and Credit Act argument by failing to raise it in his initial objection to jurisdiction, we would find the Madison County court's exercise of jurisdiction proper in light of the Indiana court's decision to decline jurisdiction.

■ The Full Faith and Credit Act mandates that "continuing and exclusive jurisdiction" to modify child support orders remains in the issuing state unless (1) the issuing state is no longer the residence of either party or the children for whom support was ordered (28 U.S.C. § 1738B(e)(2)(A) (1994 & Supp. 1999)) or (2) each party signs a written consent for the courts of another state to modify the order and assume continuing and exclusive jurisdiction over it (28 U.S.C. § 1738B(e)(2)(B) (1994 & Supp. 1999)). Neither of these conditions is

present. Therefore, the propriety of Illinois's exercise of jurisdiction turns on the impact of the Indiana court's decision to decline jurisdiction and defer to Illinois.

■ The Full Faith and Credit Act neither expressly authorizes nor expressly prohibits courts from declining jurisdiction and is silent on the effect of one state's decision to decline jurisdiction on another state's ability to exercise jurisdiction. We hold that the expressed congressional intent behind the Full Faith and Credit Act requires an interpretation allowing Illinois to assume jurisdiction under the facts of the case at bar. Were we to hold otherwise, the result would be to allow no court to hear Melissa's petition, thus depriving the Mattmuller children of additional support to which a court of this state found them eligible. Even were we to agree with Dwight that the Indiana court erred in declining jurisdiction, we would lack the authority to order it to assume jurisdiction, and principles of *res judicata* operate to bar the Indiana court from relitigating the issue it had already decided by final order. This result flies in the face of the purposes of the Full Faith and Credit Act.

Although we need not decide whether the Indiana court erred in declining jurisdiction, we note that the only logical and equitable interpretation of the Full Faith and Credit Act is that it does not preclude courts from declining jurisdiction as the Indiana court did in the instant case. The interpretation Dwight urges can, in some instances, lead to absurd results. Consider, for example, a judgment of dissolution issued by an Alaska trial court. The father's employer transfers him to an overseas position for a period of five years, during which time he retains Alaska residency. Meanwhile, the mother and children move to Illinois. Under Dwight's interpretation, the Full Faith and Credit Act would prevent the issuing court in Alaska from deferring jurisdiction to Illinois, a result that would be ludicrous. In interpreting federal statutes, we must presume that Congress did not intend absurd results. *United States v. Turkette*, 452 U.S. 576, 580, 69 L. Ed. 2d 246, 252-53, 101 S. Ct. 2524, 2527 (1981).

Dwight contends, nevertheless, that allowing a trial court of one state to assume jurisdiction where another has declined to do so unfairly circumvents the Full Faith and Credit Act's requirement for the written consent of both parties in order for a court to transfer jurisdiction from the issuing state if it would otherwise be proper there. See 28 U.S.C. § 1738B(e)(2)(B) (1994 & Supp. 1999); see also *Early v. Early*, 269 Ga. 415, 417, 499 S.E.2d 329, 330-31 (1998). We disagree under the facts of the case at bar. The Illinois court applied Indiana law, thus protecting Dwight's interest in having the case decided under the law of his choice. Moreover, by failing to appeal the

Indiana court's decision not to assume jurisdiction, Dwight implicitly acknowledged the validity of that ruling. See *In re Marriage of Mauro*, 187 Ill. App. 3d 794, 797, 543 N.E.2d 856, 857 (1989).

We recognize that we reach a result contrary to that reached by the Supreme Court of Georgia in *Early*, the only court of which we are aware to decide whether the Full Faith and Credit Act permits trial courts to decline jurisdiction. However, we find the reasoning of the *Early* dissent more persuasive than that of the majority. As Presiding Justice Fletcher pointed out, Congress never intended the Full Faith and Credit Act to create a "right" to litigate modifications of child support orders in their state of origin until the children reach the age of majority; rather, the intent was "to prohibit a state from modifying a support order 'unless the *recipient* of child support payments resides in the [s]tate in which the modification is sought.' " (Emphasis added.) *Early*, 269 Ga. at 418-19, 499 S.E.2d at 331-32 (Fletcher, P.J., dissenting), quoting S. Rep. No. 103—361, at 1 (1994), reprinted in 1994 U.S.C.C.A.N. 3259. Moreover, the *Early* court was deciding an appeal from the decision of a trial court of its own state to decline jurisdiction in favor of a California court. That is not the case confronting us. Regardless of the propriety of the Indiana court's decision, we lack the authority to reverse that court; therefore, we decide only the effect of its decision on Illinois's exercise of jurisdiction. If Dwight believed that the Indiana court erred, his remedy was to appeal its decision to the appellate courts of Indiana. See *In re Marriage of Arulpragasam & Eisele*, 304 Ill. App. 3d at 147, 709 N.E.2d at 731. Because the Indiana court declined jurisdiction in favor of the Illinois court, the Illinois court's assumption of jurisdiction does not violate the Full Faith and Credit Act.

### B. The Uniform Interstate Family Support Act

■ Dwight next contends that the Madison County court lacked subject matter jurisdiction because it violated Illinois's enactment of the Uniform Interstate Family Support Act (Uniform Support Act) (750 ILCS 22/100 through 999 (West 1998)) by exercising its jurisdiction. Melissa contends that section 202 of the Uniform Support Act (750 ILCS 22/202 (West 1998)) renders the requirements of sections 611 and 613 (750 ILCS 22/611, 613 (West 1998)) inapplicable when Illinois courts have personal jurisdiction over nonresidents pursuant to section 201 (750 ILCS 22/201 (West 1998)) and that, therefore, the trial court's jurisdiction was proper. We find neither argument persuasive.

Section 205(d) of the Uniform Support Act requires Illinois trial courts to "recognize the continuing, exclusive jurisdiction of a tribunal

of another state which has issued a child-support order pursuant to a law substantially similar" to the Uniform Support Act. 750 ILCS 22/205(d) (West 1998). Both the Illinois enactment of the Uniform Support Act and its Indiana counterpart provide that the issuing state retains jurisdiction to modify a child support order as long as either party or a child for whom support is ordered remains a resident of the issuing state or both parties file written consents to the assumption of jurisdiction by a different state. 750 ILCS 22/205(a) (West 1998); Ind. Code § 31—18—2—5(a) (1998). Thus, regardless of the applicability of sections 611 and 613, section 205 precludes the exercise of jurisdiction by the Madison County court unless the Indiana court's decision to decline jurisdiction in its favor permitted it. For the same reasons we concluded that the Indiana court's decision to decline jurisdiction permitted the Madison County court to exercise jurisdiction under the Full Faith and Credit Act, we conclude that the Indiana decision also permitted the Illinois court to exercise its jurisdiction under the Uniform Support Act. We need not decide whether the Full Faith and Credit Act preempts the Uniform Support Act, because the application of either yields the same result.

### C. Continuing Jurisdiction in Light of the Children's Move to Wisconsin

■ Finally, Dwight argues that, even if the Madison County court had the authority to rule on Melissa's motion under the Full Faith and Credit Act and the Uniform Support Act, it abused its discretion in failing to decline jurisdiction once Melissa and the children moved from Illinois to Wisconsin because (1) Illinois no longer had a substantial interest in the litigation and (2) the decision will encourage forum-shopping. We disagree.

The decision to decline jurisdiction in favor of another court is within the discretion of the trial court, and we will not reverse the court's determination absent an abuse of discretion. *In re Marriage of Arulpragasam & Eisele*, 304 Ill. App. 3d at 151-52, 709 N.E.2d at 734. The trial court recognized the fact that Illinois lost its substantial interest in determining the Mattmuller children's support *after* Melissa moved with them to Wisconsin; thus, it included in its July 5 order provisions deferring to the courts of Indiana any future modification petitions and ordering the parties to register its judgment in Indiana. The support-modification order was retroactive and applied to the period of approximately 19 months during which the children lived in Illinois, a period for which Illinois did have a substantial interest in determining their support. Thus, the court did not rule in a matter over which Illinois had no interest in litigating.

We find Dwight's contention regarding forum-shopping unavailing as well. The record reveals that Melissa chose to relocate to Collinsville, where her parents live, to take a position in St. Louis paying a higher salary than she earned in her previous position in Indiana. When her job security became tenuous, she received an offer for a more stable and more lucrative position in Milwaukee. When she filed her petition to modify visitation and support, she and the children resided in Illinois and Dwight lived in New Mexico, thereby apparently rendering Illinois an appropriate—if not *the most* appropriate—forum to hear her petition. The trial court found Dwight to be a permanent resident of Indiana, based on his intent to return there after nearly two years in New Mexico, as evidenced solely by a letter from his employer indicating that his reassignment to New Mexico had been intended to be temporary. We find it more logical to conclude that Melissa chose to bring her petition in Illinois because it was the children's home state (see 28 U.S.C. § 1738B(b) (1994 & Supp. 1999) (defining "child's home State" as the state in which a child lived with a parent for the six months immediately prior to the filing of the petition)) and the only state in which any of the children or either of the parties physically resided and the only state to which the children had significant ties than to conclude that she did so hoping to obtain a more favorable result. Further, by applying Indiana law, the trial court eliminated any motivation Melissa might otherwise have had to file her petition in a more favorable forum.

Dwight's contention that the trial court's decision improperly strips the Indiana court of the authority to modify its own order is without merit. Indiana declined jurisdiction. When it did so, all three children and both parents lived outside the State of Indiana. Moreover, the Madison County court's order defers future modifications to the Tippecanoe County, Indiana, court for the same reason that court deferred jurisdiction to Madison County earlier: now none of the children and neither of the parties live in Illinois, while Dwight has returned to Indiana.

Significantly, by the time Melissa and the children moved to Wisconsin, the trial court had already heard evidence and determined several issues necessary to calculate child support. Specifically, the April 10, 2000, order provided that (1) the amount of support would be calculated based on a percentage of Dwight's gross income, not his net income, (2) a claimed work-related child care expense would not be included because Melissa had failed to provide adequate proof she was incurring it, and (3) the final order would direct Dwight to pay a percentage of his income from bonuses. To require the Indiana court to relitigate these issues, already determined by the Illinois court,

would serve only to frustrate efforts at judicial economy in both states. We conclude that the trial court properly exercised its discretion in retaining jurisdiction to enter a final support-modification order.

## III. CONCLUSION

For the reasons stated, we affirm the judgment of the trial court modifying the child support ordered by the Indiana dissolution order.

Affirmed.

HOPKINS, P.J., and GOLDENHERSH, J., concur.